WANGER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Peter M. Jones, Esq. SBN# 105811

Attorneys For: Defendant, Nathan Daniel Larson

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>NATHAN DANIEL LARSON<br><br>　　　　　　Defendant | Case No.: 1:21 CR 00022-NONE-SKO<br><br>**SUBMISSION OF DEFENDANT'S HANDWRITTEN MOTIONS TO PROCEED PRO SE AND TO APPEAR IN COURT, IN PERSON, WITHOUT ANY FACIAL COVERING; DECLARATION OF PETER M. JONES** |

Defendant, NATHAN DANIEL LARSON, by and through his counsel, Peter M. Jones, hereby submits additional letters in which he moves to proceed *pro se* and requests a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975); and his motion to appear in court, in person, without a mask at all future hearings on the above entitled case.

## DECLARATION OF PETER M. JONES

I, Peter M. Jones, declare as follows:

1. I am an attorney admitted to practice before this court, and am counsel of record for Nathan Daniel Larson, the Defendant in the above entitled action, having been appointed to represent him on March 1, 2021.

2.      On April 14, 2021 a Joint Status Report was filed indicating that Mr. Larson had mailed to the court clerk's office two letters. One letter contained his request for a hearing to make a motion to proceed *pro se*. The other contained his objection to appear via video-conferencing, moving to appear instead, in court, in person, without a mask.

4.      On April 21, 2021 Mr. Larson and I appeared by way of video-conferencing at his Status Conference. At that hearing he reiterated his interest in appearing personally, in court, without a mask and also to proceed *pro se*. The court, however, had not received his letters, and asked counsel to prepare something in writing that conveyed Mr. Larson's motions/requests.

5.      Attached are new handwritten motions Mr. Larson has prepared for the court's consideration supporting his position as described above.

I declare under penalty of perjury that the foregoing is true and that this declaration was executed in Fresno, California on April 27, 2021.

/s/ *Peter M. Jones*
PETER M. JONES, Attorney for
Defendant, Nathan Daniel Larson

# UNITED STATES

# V.

# NATHAN DANIEL LARSON

## 1:21 CR 00022-NONE-SKO

## ATTACHMENT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff | 23 April 2021 |
| v. | Case No. 1:21-cr-00022- |
| NATHAN DANIEL CARSON, | NONE-SKO |
| Defendant. | |

DEFENDANT'S MOTION TO PROCEED PRO SE

    I, Nathan Carson, defendant, move to exercise my right under Faretta v. California to represent myself in these proceedings.

    I meet the minimum standards of literacy to proceed pro se, having earned a bachelor's degree in management from George Mason University and been employed as a Certified Public Accountant for several years. I have written articles about subjects such as federal law that were awarded "good article" or "featured article" status by the Wikipedia community, and have also written editorials that were published in newspapers and organizational newsletters, including a Richmond Times-Dispatch Correspondent-of-the-Day.

    I am prepared to answer questions in a Faretta colloquy about the current court proceedings, in which I face kidnapping, transportation, enticement, exploitation, and pornography charges punishable by lengthy prison terms, supervised release, fines, special assessments, loss of civil rights,

-1-

etc.

In addition to doing legal research, I also gained invaluable experience through the "school of hard knocks" as a defendant in a prior federal criminal case, including two supervised release revocations, which taught me a lot about how the law works and what pitfalls are to be avoided.

The two cases have some similarities. A comparison of my experiences representing myself vs. being represented by counsel, combined with conflicts I am having with counsel in this case, which are reminiscent of conflicts I had with counsel in the other case, reinforce my belief that self-representation would serve my interests (as I construe them) best.

I began drafting a "Defendant's notice that this is a test case and/or a case involving civil disobedience" in support of this motion and to help rebut any claim that I am incompetent, but since the statements I would have needed to make to explain my motives and thought processes might have worked against my wish to hold the government to its burden of proof, I decided to save that information for the sentencing stage (if any).

Sincerely,
*[signature]*
Nathan Larson, defendant

- 2 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
          Plaintiff,

v.

NATHAN DANIEL LARSON,
          Defendant.

23 April 2021

Case No. 1:21-cr-00022-NONE-SKO

DEFENDANT'S MOTION TO HOLD PROCEEDINGS IN PERSON AND WITHOUT FACE MASKS

    I, Nathan Larson, defendant, move that the court hold proceedings in person and without face masks.

    Appellate courts tend to give some deference to the findings and exercises of discretion made by district courts because they know that reading a written record is no substitute for being present in person to observe everything that might read shed light on relevant facts and indicate what would be the proper decisions. The traditional courtroom design is optimized for this purpose.

    In-person appearances without masks allow nonverbal cues such as demeanor, expressions, gestures, and so on to communicate thoughts, reactions, nuance, shades of meaning, and so on. This can provide additional information about the person who is being questioned or judged e.g. as to their personality or sincerity.

    Nonverbal communication can also help court

-1-

proceedings be more orderly and fair, as parties can signal attentiveness or distraction, understanding or confusion, agreement or disagreement, or having something to say, without interrupting a speaker. One's eyes can scan the room to quickly take in simultaneous reactions, which might not be possible on a relatively small video screen, much less in a teleconference.

My main objection to videoconferencing is that it creates an uneven playing field. I am shackled up in front of a laptop I'm not allowed to touch while other parties have full freedom to use their (possibly higher-powered) personal or office computers to do online research, check the latest case-related emails, find and retrieve documents at the push of a button, chat privately, and maintain better situational awareness through their ability to operate the videoconferencing app's various features rather than passively watching whatever is served up to them as they sit in chairs.

If we were in a physical courtroom, everyone would have relatively equal access to resources. For example, if someone cracked open a paper copy of the rules of criminal procedure to make a point, I could ask to look at it. But I can't view or scroll through other people's screens, or have comparable access to the kinds of books or other materials they might be flipping through in the

comfort of their homes or offices, where they have convenient access to everything they might need in a space set aside for their work and configured as they see fit.

As a detained defendant, I already face disadvantages when I'm preparing for upcoming court proceedings, in that I lack unfettered access to resources that could help me make a stronger case. For example, a jailhouse law library will not have access to Google, Wikipedia, or similar general research sites, or to the archives of criminal defense attorney organizations, or to academic databases with collections of law journal articles. Nor is a detained defendant easily and quickly able to communicate with his supporters. Videoconferencing creates even more of a digital divide by allowing other parties to the case access to such resources in real time during court proceedings, making it easier for me to get outmaneuvered.

When proceedings are held at the courthouse, it gives the defendant and his attorney one last opportunity to go over my documents together before court starts, and during court they can pass documents back and forth as needed and whisper together briefly without needing to call for a total halt in the proceedings to go into an electronic breakout room. The defendant can see what documents are under discussion and avoid getting confused by references to documents that are not in

- 7 -

front of him. Given the logistical delays and inconveniences involved in arranging jailhouse meetings or sending documents to or from the jail, every chance to get together in person at the courthouse can be valuable in making the process go more smoothly and speedily.

In the corporate world, it is considered a best practice to hold important or difficult conversations such as performance reviews in person. Criminal proceedings fall into an analogous category except are even weightier since society's representatives are passing judgment on an individual's alleged behavior and deciding what punishment, if any, to impose, including possible incarceration.

Psychologically, it is easier to treat harshly a person one does not need to be physically present with and look in the eye. We know this from how people behave on the Internet, or how customer service at a drive-through or over the phone is often worse than customer service in person. Videoconferences and teleconferences are dehumanizing: in the former, the screen flattens people to two dimensions, eliminating some nuance from the situation, while in the latter, the defendant is reduced to a voice on a phone and a name on a piece of paper, removing some of the reminders that he is a living, breathing, and feeling human being instead of an abstract concept. Some information about his unique qualities is absent when the visual cues are removed.

The dignity of the proceedings is upheld better

— 9 —

by appearing in person in a courtroom with the traditional ceremony and emblems of power, signifying that like the U.S. Mail, the court will not allow the ordinary kinds of adverse circumstances to stop its officers from carrying out their duties as usual, because they are intrepid and determined, chosen for dedication to their mission and expected to uphold it. A court that does not allow a mild flu-like virus to disrupt its routines will command more respect, as the public may logically believe that same kind of courage could also help the court fearlessly apply the law in the face of pressures not to, such as what exist now.

Indeed, the courts are under a lot of pressure to let a largely self-regulating class of "experts" dictate their actions, with regard to the coronavirus and many other issues. Since scientists' funding and career advancement is often tied to politics, the "scientific consensus" as expressed in published research findings has to be taken with a grain of salt. Not only is this establishment capable of having a political agenda that its members are expected to go along with, but sometimes it also has to bow to the politicians' will to maintain its privileged position, leaving the judiciary as the last remaining possible check, especially when the public's ability to assemble and petition has been limited by public health measures imposed by the state.

The coronavirus's dangers have been exaggerated in a way that is reminiscent of the "reefer madness"

-5-

scares about cannabis. Scientists used to say that pot killed brain cells, based on experiments in which huge amounts of cannabis smoke was forced on primates, even though many of us knew intelligent people who smoked pot. Eventually it was shown that pot acted in a nontoxic way on the brain through a cannabinoid receptor system, but not till after decades of prohibition. The federal government blocked a lot of research into cannabis medical uses so it was hard to change its legal status.

There are a lot of statistics being released about coronavirus cases but few of us know anyone personally, or even a friend of a friend, with a serious case. My sister tested positive for it, but experienced only mild cold symptoms which could have been due to another illness she was suffering from simultaneously that led her to get a Covid test. We should always check public health claims against our own anecdotal evidence to see if they make sense, since often they are misleading. Although the Centers for Disease Control have made certain recommendations, the judiciary, as an independent, obstinately "non-political" branch of government with life-tenured judges, is well-positioned and duty-bound to reach its own conclusions based on what seem to be the most reasonable interpretations of the available facts, given the standard of evidence applicable to the situation and the measures proposed.

Many of the reported coronavirus deaths were of people who died of other ailments but happened to also

-c-

test positive for Covid. It is not always clear what was the exact role of every possible contributing cause. At any rate, generally it is the elderly who are susceptible to being killed by Covid, when their bodies have been weakened to a point where a bad flu would be as lethal to them. Many of them are already in such poor health that they are doomed to endure a low quality of life for the rest of their days, which will not be many, but the government would grind the economy to a halt and disrupt every other sphere of society, even going so far as to undermine the integrity of the justice system, to extend their lives a few months.

It might not be so bad if this were a temporary, one-time phenomenon, but there will be other corona-virus variants and other major flus, so that those waiting for an end to the crises before moving forward with their court cases may need to stock up on Snickers bars to tide them over. In contrast to this situation, the founders of our country lived in an era before vaccines for smallpox, measles, and other infectious diseases that they had seen ravage populations, yet in drafting constitutional protections of rights, they granted emergency exceptions only for times of war and rebellion and not epidemics. Perhaps this was because the presence of an invading army or an unruly rabble can be determined more objectively than the amount of danger posed by a virus, leaving less risk of abuse of emergency powers. I

- 7 -

doubt it's because they had never encountered anything as deadly as the Coronavirus.

Mask requirements during voir dire, witness testimony, and other phases of the trial raise due process concerns, including impartial jury and confrontation clause issues. If these pandemic restrictions are not soon lifted, I may have to choose between a fair trial and a speedy trial, if I am even given a choice.

What agenda does this serve? Some point to drug company profits, as millions receive a vaccine they may not need. Others say it was to wreck the economy and disrupt candidates' ability to hold massive in-person rallies in a presidential election year. Or it could be to get the public accustomed to bills for trillions of dollars in government expenditures, or to tolerating infringements of their liberty under such dubious pretexts as that it is only for a short time, to "flatten the curve." Some point to the enrichment of huge corporations like Amazon while small businesses were shuttered and went under. There could be any number of powerful interest groups with reason to want to perpetuate this "emergency," and few with the clout to be able to successfully oppose them, at least for the time being.

That does not mean it is not worth trying, when we know that it is our duty to do our best to prevent or stop an injustice from happening. Those with truth on their side are not always the best-organized

-8-

or most influential at first, compared to the establishment, but what goes around tends to eventually come around, and justice gets served after a fashion. When idealists are willing to make personal sacrifices for what they know is right, they have the reward of knowing that the country, or kind of country, for which they fight will have a greater tendency to prevail and prosper in the long run, than if they did nothing, or caved in to the powerful without a fight.

Sincerely,

Nathan Loden
JID 7105095
BKG 2112576
Fresno County Jail
PO Box 872
Fresno CA 93712

-9-