WANGER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Peter M. Jones, Esq. SBN# 105811

Attorneys For: Defendant, Nathan Daniel Larson

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>NATHAN DANIEL LARSON<br><br>                    Defendant | Case No.: 1:21 CR 00022-NONE-SKO<br><br>**SUBMISSION OF DEFENDANT'S HANDWRITTEN MOTION TO PROCEED PRO SE AT HIS APRIL 30, 2021 HEARING REGARDING THE ISSUE OF HIS COMPETENCY. DECLARATION OF PETER M. JONES** |

Defendant, NATHAN DANIEL LARSON, by and through his counsel, Peter M. Jones, hereby submits his motion to represent himself at his hearing to be held at 2:00, April 30, 2021, regarding the issue of his competency.

**DECLARATION OF PETER M. JONES**

I, Peter M. Jones, declare as follows:

1. I am an attorney admitted to practice before this court, and am counsel of record for Nathan Daniel Larson, the Defendant in the above entitled action, having been appointed to represent him on March 1, 2021.

2.     On April 14, 2021 a Joint Status Report was filed indicating that Mr. Larson had mailed to the court clerk's office two letters. One letter contained his request for a hearing to make a motion to proceed *pro se*. The other contained his objection to appear via video-conferencing, moving to appear instead, in court, in person, without a mask.

3.     On April 21, 2021 Mr. Larson and I appeared by way of video-conferencing at his Status Conference. At that hearing he reiterated his interest in appearing personally, in court, without a mask and also to proceed *pro se*. The court, however, had not received his letters, and asked counsel to prepare something in writing that conveyed Mr. Larson's motions/requests.

4.     On April 28, 2021 Mr. Larson and I appeared by way of video-conferencing at his continued status conference. At that time he reiterated his opposition to appearing via video-conferencing and moved to appear in court, in person, without any facial covering. He also moved to proceed pro se. The Government indicated an intent to challenge Mr. Larson's "competency". The issues of appearing pro se and competency were trailed to April 30, 2021 for further review.

5.     Attached is Mr. Larson's motion to represent himself at his hearing on April 30, 2021 on the issue of his competency.

I declare under penalty of perjury that the foregoing is true and that this declaration was executed in Fresno, California on April 30, 2021.

/s/ *Peter M. Jones*
PETER M. JONES, Attorney for
Defendant, Nathan Daniel Larson

# UNITED STATES

# V.

# NATHAN DANIEL LARSON

# 1:21 CR 00022-NONE-SKO

# ATTACHMENT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 1:21-cr-00022 |
| Plaintiff | NONE-SKO |
| v. | Magistrate Judge |
| NATHAN DANIEL LARSON, | Barbara A. McAuliffe |
| Defendant | 28 April 2021 |

DEFENDANT'S MOTION TO REPRESENT HIMSELF PENDING DISPOSITION OF THE GOVERNMENT'S MOTION FOR A COMPETENCY EVALUATION

I, Nathan Larson, defendant, move to represent myself pending the court's disposition of the government's motion for a competency evaluation.

An analysis of the alternatives and their possible consequences can resolve this chicken-and-egg dilemma in a logical way. The relevant issue here is what's at stake in the issues to be resolved between now and the disposition of the government's motion. For example, I have several motions that I want to introduce at some point that my lawyer would not want to introduce, and he likely has motions he wants to introduce that I would oppose.

Perhaps we should just have a moratorium on case activity unrelated to competency proceedings and focus attention on resolving that one issue as rapidly

-1-

as possible. That will simplify the question of what's at stake in letting me represent myself during that interval, while avoiding violating my fundamental right to represent myself with regard to other matters, assuming there's nothing else that urgently needs to be dealt with in the meantime.

Analysis

So, what's at stake? Let us look at possible outcomes of letting me represent myself, vs. letting my lawyer represent me.

If my lawyer represents me, what would he say or do that would differ from what I would say or do? I know that as a strategic matter, he thinks it might not be a bad idea to just do the evaluation to put the issue of competency to rest. My own view is that introducing psychiatric issues to this case in any way will likely work against my interests and goals in this and any future cases by putting on record a competency evaluation and possibly diagnoses and other unflattering conclusions more recent than what are already on record. It's a bit like having a merchant do a check on your credit report; it hurts your credit rating just to have that inquiry done because it signals that you have reason for wanting to check, which may reflect badly on your creditworthiness. Sometimes it's better to leave certain stones unturned.

-5-

As proof of this, consider that the fact that I had a competency evaluation in 2009 is not being used as justification for wanting a new competency evaluation in 2021, because it's assumed that my competency was enough in question back then to justify an evaluation, which means it's potentially questionable now too since some psychiatric issues might be long-term and ongoing. By that logic, a more recent competency evaluation could justify still more evaluations, because just the ordering of it is an indication the court recently thought my competence was enough in doubt that it needed to be ordered, regardless of how it turns out. It's a vote of no-confidence by the court.

The reality is that in 2009, my lawyer in that case blindsided me by filing a motion for a competency evaluation without sharing with me the contents of that motion (I could not look it up in PACER because I was in detention). I was unaware of the implications or possible consequences of, or the required legal grounds or procedures for such an evaluation, because I was new to the federal system and unschooled in that area of law, and had not seen what statutes were cited in the motion, to know what I needed to look up. During the court hearing, I was mystified as to what the procedural technicalities under discussion were all about, and didn't raise a timely objection.

Later, I found out my lawyer in that case had

-6-

misleading statements in that motion about our conversations. He also continued asking the court for an insanity evaluation after I told him I wanted to represent myself and abandon that defense. This type of experience has soured me on the idea of being represented by counsel, a point I may elaborate on later as I introduce to the court the test case / civil disobedience aspects of this case, which represent a resumed pursuit of the kind of political strategy I more abortively tried in that previous court case.

The political nature of this case turns a lot of notions on their heads, such as the idea that defense attorneys and mental health workers are allies of the accused offering purportedly useful help. Their role as agents of the establishment puts them, typically, at odds with the priorities of the dissident activist who views self-sacrifice as a necessary and normal part of his work, much as soldiers or firefighters might run toward danger too in service to their country.

Defenses such as incompetency, insanity, or diminished capacity tend to discredit a civil disobedient by suggesting his fearless behavior was the product of an unsound mind rather than a high-minded philosophy superior to what is currently embraced by the establishment and reflected in its laws and that he needs mental health treatment to bring him into conformity with societal standards. While this may seem to a defense attorney with mainstream political views to be

- 11 -

more compassionate, merciful and productive than incarceration and other forms of retribution; it goes directly against the dissident's message that it is society's, or the government's, or psychiatrists' standards that need to change; this is his defense, or his argument in mitigation, which, while it may currently be a dissenting opinion, he hopes will someday persuade and be accepted, with the help of his having demonstrated its relevance by his willingness to suffer for what he believes. This can be a force-multiplier for activists, drawing people's curiosity to find out what made them so committed to their cause, inspiring future activists to similar acts, and teaching the public about the principles embodied in and motivating their actions. The civil disobedient views all this as part of a legitimate and potentially effective long-term process for bringing about cultural and political change, and to bolster his own morale and assert his own credibility as an activist perhaps cites examples of historical figures who employed such methods, whose causes ultimately prevailed, to the point that now they are viewed as heroes and martyrs, maybe even saints.

One might argue that the court is under no obligation to indulge a self-styled "political prisoner's" dissident agenda by letting him deliberately act in ways that could work contrary to his own legal interests, for the sake of using the proceedings as a platform for putting forth his beliefs. On the contrary, though, a defendant's motives, intents, and thought processes are considered highly

-C-

relevant to legal culpability and to sentencing factors such as the history and characteristics of the offender and the nature and circumstances of the offense; and the law allows suspects and defendants to waive all sorts of legal rights, for any reason or no reason. Every day, courts hand down convictions based entirely on consent searches and confessions for which the defendant received no benefit, or at any rate no benefit commensurate to what he gave up in terms of having to spend years in prison more than what he would have served had he invoked his rights. The dissident who proceeds pro se at least may achieve a political goal that will benefit his posterity and the society he loves.

He may not be making a sacrifice anyway by forgoing a mental health defense since such defenses can easily backfire. A defendant found incompetent to stand trial may be confined more years in a mental hospital than he would have spent in prison had he been put on trial. The same goes for those found not guilty only by reason of insanity. Those who claim diminished capacity may give the court reason to impose onerous conditions of supervised release for purposes of "monitoring their mental health" and "treating their condition," which can lead to revocations if the defendant can't stomach complying with what he views as quackery and unreasonable restrictions on his liberty. He may get a longer prison sentence for blaming a mental health condition that the court finds fabricated rather than taking full responsibility for his

- 6 -

actions; or the court may find his mental illness makes him more likely to commit crimes and that therefore a harsher sentence is needed to adequately deter him and to protect the public. Such a goal of incapacitation was indeed cited in my second supervised release revocation proceeding as a potential justification for giving me the top-of-the-guidelines-range sentence that I received.

At any rate, let's suppose my lawyer represents me in the competency proceedings. He might reference our parent conversations hinting at mental health issues, the possible existence of which I know he believes is worthy of exploration in light of our knowing disregard of the likelihood of getting caught engaging in certain behaviors, which could be construed as crazy, stupid, civil disobedience, setting the stage for a test case, or all of the above. For him to cite privileged discussions, though, against my wishes, could deter open and honest attorney-client communication, hindering effective assistance of counsel.

So what else could he say in competency proceedings that would differ from what I would say? Is there some legal argument he would be more competent to make, enough to warrant overriding the presumption that I have a right to represent myself? The assessment of that competence through adversarial proceedings, though, raises another chicken-and-egg problem about who will represent my side as the determination is being made.

I propose the court do a limited Faretta colloquy

-9-

for purposes of letting me represent myself with regard to this competency matter. The court can then gain some idea, from how I conduct myself in making my case, that there are no grounds for a competency evaluation, as to whether I am competent to represent myself more generally. The court will learn more about my competency from seeing me in action than from having me sit like a potted plant while my lawyer speaks for me.

    The worst case scenario in that situation is that due to incompetence, I fail to persuade the court I don't need a competency evaluation. That's a similar worst-case scenario as if my lawyer represented me in violation of my right to self-representation and failed to do as good a job as I could have. But at least if I have the opportunity to represent myself, the responsibility for the quality of the case made is mine, so that you won't hear a complaint from me (except about the fact that it is hard to prepare a case from detention, when we get to bail proceedings later on; but that's unrelated to competency).

    The best case scenario is that I or my lawyer convince the court that a competency evaluation is unnecessary; but won't the court be surer of its conclusion, and that it was reached fairly, if I was the one to convince the court without my lawyer's help? Real-world performance proves more than an interview about hypothetical real-world performance.

    But if we are going to do an interview, why should not a judge be the one to ask the necessary questions

-11-

Why outsource this to mental health workers who have relatively little legal training or experience about what's involved in self-representation? In some ways, a judge is more qualified than they are, so why rely on them?

To be honest, if I could fool a judge as to my competency, I could probably fool a mental health worker too, by just denying any plausibly deniable thoughts, feelings, behaviors, etc. that could tend to suggest incompetency. All they have to work with are the same facts the court has, and a list of questions those who have already been evaluated in the past will be familiar with, as well as their personal impressions of the interviewer's affect, assuming it's not hidden behind a mask.

Conclusion

On Friday, April 30th's hearing, let's do a limited Faretta colloquy by videoconference about just the issues pertaining to self-representation with regard to competency proceedings, and let's put all other issues in the case on hold till arguments are heard with regard to competency and the government's motion disposed of, so that by focusing on that it can be done more expeditiously, and the issue of competency with regard to other issues will not get in the way of self-representation with regard to this issue.

After said disposition, we may hold a more extensive Faretta colloquy in person addressing the larger issue of self-representation in the case as a whole, if

—9—

appropriate given the outcome of the competency proceedings.

Sincerely,

Nathan L

Nathan Larson, defendant
JID 7105095
BKG 2112576
PO Box 872
Fresno, CA 93712

Footnote from page 6
* Certain features of the criminal justice system, such as the rights to self-representation, a jury trial, and allocution were arguably made for cases like this, but for them to work properly requires keeping an open mind or even giving the benefit of the doubt with regard to the possibility that the defendant's apparent "self-destruction" is crazy like a fox rather than a sign of incompetency, requiring his hospitalization or the taking over of his defense by his attorney.

## CERTIFICATE OF SERVICE

I submit this motion to my attorney, Peter Jones, for electronic filing with the court and distribution to the parties.

x Nathan L
4/25