PHILLIP A. TALBERT
Acting United States Attorney
BRIAN W. ENOS
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NATHAN DANIEL LARSON,<br><br>　　　　　Defendant. | Case No. 1:21-cr-00022 NONE/SKO<br><br>**UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION TO DETERMINE DEFENDANT'S COMPETENCY AND (2) COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED. R. CRIM. P. 12.2(c)(1)(A)**<br><br>Date: June 17, 2021<br>Time: 10:30 a.m.<br>Court: Hon. Dale A. Drozd |

### I.　　NOTICE OF MOTION AND MOTION

To defendant Nathan Daniel Larson and his counsel of record, please take notice that on the above date and time and before the Honorable Dale A. Drozd, United States District Judge, the plaintiff, United States of America, will move this Court, pursuant to 18 U.S.C. §§ 4241, 4247, and Rule 12.2(c)(1)(A) of the Federal Rules of Criminal Procedure, for a psychiatric or psychological examination of defendant regarding competency, followed by a competency hearing.

### II.　　INTRODUCTION

The government submits that there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241. To be clear, the government takes no position at this time regarding the extent defendant is in fact suffering from a mental disease or defect rendering him

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION TO DETERMINE DEFENDANT'S COMPETENCY AND (2) COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED. R. CRIM. P. 12.2(c)(1)(A)

1

mentally incompetent. However, an extended series of events have continued to unfold, from the 1990s through this action's last court appearance in April 2021, that should be brought to the Court's attention so that the Court can decide whether the defendant is in need of a mental health evaluation pursuant to 18 U.S.C. § 4241 and relevant jurisprudence. Out of an abundance of caution, the United States files this motion in light of a litany of facts that may very well bear on the defendant's fitness to stand trial and/or enter a knowing, voluntary and intelligent guilty plea. The United States bases this motion on the files and records of this case, this motion and its attachments, and any oral argument or testimony presented at the hearing.

### III.     FACTUAL AND PROCEDURAL BACKGROUND

#### A.     Defendant's Arrest, Charges, Arraignment, and Detention

On December 23, 2020, the government filed a criminal complaint charging defendant with counts including: kidnapping (18 U.S.C. § 1201), sexual exploitation of a minor (18 U.S.C. § 2251(a)), receipt and distribution of child pornography (18 U.S.C. § 2252(a)(2)), interstate transportation of an individual with the intent for such individual to engage in illegal sexual activity (18 U.S.C. § 2421), and coercion and enticement of a minor to engage in illegal sexual activity (18 U.S.C. § 2422(b)). Dkt. 1.

The complaint based its charges on a probable cause statement relating to defendant's meeting a 12 year-old girl from Fresno, California on a rape/kidnap fetish website he operated online from his home in Virginia, traveling to Fresno and coaxing her out of her home without her parents' permission or knowledge at roughly 2:30 am on December 14, 2020, and attempting to fly back to his home in Virginia with her the next morning, and after stating his intention to impregnate her once she turned 13. Dkt. 1, paras. 4-11. Defendant was caught with the minor by the Denver Police later that day at the Denver Airport en route back to his home in Virginia prior to their changing planes. Ibid. By this time, defendant knew the minor's age, received sexually explicit material from her, and discussed "pluck[ing he]r virginity." Id., para. 12.

On January 28, 2021, the grand jury returned a five-count indictment against defendant, charging him with separate counts including: (1) kidnapping and attempt (18 U.S.C. §§ 1201(a)(1), (d) and (g)); (2) transportation of a minor with the intent to engage in illegal sexual activity (18 U.S.C. § 2423(a)); (3) coercion and enticement of a minor (18 U.S.C. § 2422(b)); (4) sexual exploitation of a minor and

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION TO DETERMINE DEFENDANT'S COMPETENCY AND (2) COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED. R. CRIM. P. 12.2(c)(1)(A)

2

attempt (18 U.S.C. §§ 2251(a) and (e)); and (5) receipt and distribution of material involving the sexual exploitation of minors (18 U.S.C. § 2252(a)(2)).  Dkt. 2.

By February 25, 2021, defendant had arrived from Colorado and appeared in federal court for his arraignment.  Dkt. 10.  The court also held a detention hearing, wherein defendant was ordered detained pending trial as both a flight risk and danger to the community.  Dkts. 10 and 11.  Defendant has remained in custody since this date.

### B. Evidence Bearing on Defendant's Competency to Stand Trial

The government presents the following chronology of evidence, spanning from the 1990s through April 2021, bearing on the propriety of defendant's undergoing a psychiatric and/or psychological examination to assess his competency to stand trial in this case:

1. Defendant's 2008 Prosecution in the District of Colorado Re: His Threats to Assassinate the President

On December 15, 2008, a federal grand jury in the District of Colorado returned a single count indictment against defendant, alleging a violation of 18 U.S.C. § 871(a) (knowingly threatening to kill the President of the United States of America).  D. Colo. Case No. 1:08-cr-00523 PAB ("Colorado Case"), Dkt. 1.  Defendant was arraigned and his detention hearing held on December 19, 2008.  Colorado Case, Dkts. 7, 9.  Within the court's detention order wherein it ordered defendant detained as a danger to the community, it found:

> [T]he defendant (born in 1980) has a very long history of mental illness that dates back to age 4.  As a juvenile (11th grade), defendant was charged in juvenile court with assault and battery, and malicious wounding of a police officer.  In this juvenile case, the defendant sought revenge on a schoolmate and saved up his urine, which he then sprayed on the victim.  When the school and police intervened, he drew a pocket knife on the police officer.  At that time, defendant was believed to be suffering from depression [and] was prescribed Paxil.  He has a bad reaction to the Paxil and he became "manic."
>
> At age 19 [roughly 1999], defendant had suicidal ideations and he was placed at Dominion Hospital in Vienna, Virginia for a 72 hours hold. . .
>
> In May 2008, defendant moved to Baltimore, Maryland, [where] Defendant's mother informed pretrial release that defendant became very depressed and obsessive, reading books and information on the internet regarding anarchists and anti-government activities . . .  Defendant then decided to run for office . . . , espousing the platform that all government functions should be eliminated and the government disbanded.  He also

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION
TO DETERMINE DEFENDANT'S COMPETENCY AND (2)
COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED.
R. CRIM. P. 12.2(c)(1)(A)

3

> began to send threatening emails to various people and entities. In September 2008, defendant was again hospitalized at Prince William Hospital in Manassas, Virginia. He was diagnosed with depression . . .

Colorado Case, Dkt. 9 ("Exh. A"), p. 3.

On January 12, 2009, defendant's attorney in the Colorado Case filed a Notice of Insanity Defense. Colorado Case, Dkt. 11. On January 23, 2009, the district judge in that case held a hearing to determine defendant's competency and insanity. Colorado Case, Dkt. 17. At the conclusion of the hearing, the court ordered defendant committed to the custody of the Attorney General to undergo a competency examination. Colorado Case, Dkts. 14 and 17. By February 8, 2009, the government filed a motion for a second psychiatric examination, this time to assess "if the defendant was insane at the time of the alleged crime." Colorado Case, Dkts. 18 and 22. The court granted this motion on February 20, 2009. Colorado Case, Dkt. 21.

On May 14, 2009, defendant pleaded guilty to the crime charged, and was ultimately sentenced to 16 months in custody. Colorado Case, Dkts. 31 and 32. Sentencing was held on October 2 and October 9, 2009, wherein defendant was sentenced to an incarceration term of 16 months. Colorado Case, Dkts. 43-45.

        2.       <u>The Psychiatric Records from the Colorado Prosecution</u>

As aforementioned, the district court in Colorado ordered defendant to undergo two separate psychiatric and/or psychological examinations. Reports of these examinations include those authored by: (1) Karen V. Fukutaki, M.D., on February 7, 2009, and (2) David E. Morrow, Ph.D., on April 5, 2009.[1]

With respect to the Fukutaki report, the examiner generally reported that defendant's mother advised that he had experienced suicidal thoughts since he was a teenager, and likewise told her when he was a teenager that he would "not feel a thing" if he killed her with an axe. Exh. B, p. 2. The examiner also reported that defendant stated that he planned to commit suicide in while in jail, and added that he would not have to "deal with the consequences if I die." Id., p. 3. While the examiner ultimately concluded that she found defendant competent to proceed with his Colorado case, she also noted that,

---

[1] A copy of each of these records will be submitted, with requests to file each of them under seal pursuant to Local Rule 142, as Exhibits B and C, respectively.

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION TO DETERMINE DEFENDANT'S COMPETENCY AND (2) COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED. R. CRIM. P. 12.2(c)(1)(A)

4

"should he become depressed to the point he no longer cares for his future, I would be concerned that he was no longer competent to proceed." Id., p. 11.

With respect to the Morrow report (which assessed the extent defendant might be insane at the time he committed the crime in Colorado), the examiner likewise reported that defendant had claimed to have suffered from periodic suicidal ideation since a teenager and that within this timeframe he stole money from the McDonald's where he was working with the intent of purchasing a firearm with which to kill himself. Exh. C, p. 4. Defendant further reported going to a university counseling center in 1999, wherein he reported having twice attempted to obtain a gun over the past three days in order to kill himself. He reported having felt extremely depressed, suicidal, and hopeless about the future periodically since age 13. Id. The examiner further reported that defendant had also been psychiatrically evaluated in 2000, when he was found to be experiencing depression, social anxiety and difficulty concentrating, and diagnosed with a depressive disorder. Id.

Notwithstanding the above, the examiner found defendant to have been sane when he committed the crime in Colorado, and despite being "quite impulsive . . . without considering the consequences" of his actions. Exh. C, pp. 8 and 12.

      3.    Defendant's 2009 Statements While Under Supervised Release within the Eastern District of Virginia Leading to Its Revocation and his Return to Custody

After defendant's release from federal custody and on July 12, 2010, his supervision was transferred from the District of Colorado to the Eastern District of Virginia. E.D. Virginia, Case No. 1:10-cr-00249 GBL (EDVA Case), Dkt. 1. Within one month thereafter, defendant wrote his assigned U.S. Probation Officer a letter, advising among other things:

- I have decided not to comply with my conditions of supervised release anymore. The United States Government has no rightful claim to jurisdiction over me, and I am not morally bound to obey any of its laws or officers;
- From now on, I will violate federal, state and local laws at will, as long as such violations do not infringe the rights of others. For example, I will possess and use whatever controlled substances I want to possess and use;
- From now on, I will possess firearms, ammunition, destructive devices, and other dangerous weapons whenever I want to . . . If you happen to hear the distinctive sound of the gunfire of a Solothurn S-18/100 20mm Anti-Tank Cannon emanating from my backyard, as cardboard cutouts of statist federal politicians, federal judges, federal prosecutors and federal agents become riddled with large, ragged bullet holes, please know that there is nothing amiss; it is just me engaged in target practice;

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION TO DETERMINE DEFENDANT'S COMPETENCY AND (2) COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED. R. CRIM. P. 12.2(c)(1)(A)

5

- From now on, I will leave the judicial district whenever I want to. Arbitrary borders drawn by governments have no legitimacy to me. I will come and go as I please;
- I will not answer any inquiries or follow any instructions of probation officers. I will not notify any probation officer when I change residence or employment, since that is none of the court's business;
- I will frequent places where controlled substances are illegally sold, used, distributed, and administered whenever I want to frequent those places. I will associate with persons engaged in what the government deems criminal activity and with persons convicted of felonies whenever I want to;
- I will not participate in a program of mental health treatment; and
- Do not attempt to enforce the judgment of the court. I do not recognize the legitimacy of that judgment. . . I was convicted of making a threat against the President of the United States. It was a threat I was entitled to make. . . [a]t any given moment, anyone has a right to kill, or threaten to kill, the President.

EDVA Case, Dkt. 2 (Exh. D), pp. 1-2.

The district court issued a written order on this same letter, wherein it ordered defendant's immediate arrest. EDVA Case, Dkt. 2; Exh. D, p. 2. Within another month thereafter, defendant's term of supervised release was revoked. EDVA Case, Dkt. 15. By June 2013 and after multiple appeals, the district court sentenced defendant to 10 months custody within the Bureau of Prisons. EDVA Case, Dkt. 65.

**C.   Defendant's Running for State Congress in Virginia in 2018 and His Pro-Pedophilia Platform**

In 2018 and according to his Wikipedia page, defendant again ran for election to Congress from Virginia's 10th Congressional District, before withdrawing in August of that year. In response to a question from *The Huffington Post* about whether he actually was a pedophile or merely writes about the subject online, defendant responded "[i]t's a mix of both . . . When people go over the top there's a grain of truth to what they say." He then described the term as "vague" and described men being attracted to underage girls as "normal."[2] Within this same article, defendant was reported to have also endorsed child rape, father-daughter marriage, killing women and raping virgins. Exh. E, pp. 3 and 5.

///

///

///

---

[2] https://en.wikipedia.org/wiki/Nathan_Larson_(politician) ; See also Jesselyn Cook and Andy Campbell, *Candidate in Virginia Admits He's a Pedophile*, The Huffington Post, May 18, 2018 (attached hereto as Exhibit E).

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION TO DETERMINE DEFENDANT'S COMPETENCY AND (2) COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED. R. CRIM. P. 12.2(c)(1)(A)

6

### D. Defendant's 2021 Statements Re: Current Prosecution

With respect to the present prosecution, defendant's peculiar behavior continues. Within a joint status report dated April 14, 2021, defendant objected to appearing via Zoom, and prospectively objected to wearing a mask once able to appear personally in court. Dkt. 16, p. 2. As set forth within an April 23, 2021 letter to the magistrate judge, defendant's initial response to the kidnapping and other child exploitation charges in this case is to characterize this as "a test case and/or case involving civil disobedience." Dkt. 18, p. 5.[3] Defendant also characterizes himself as among "idealists [who are] willing to make personal sacrifices for what they know is right." Dkt. 18, p. 14.

Within an April 28, 2021 letter to the magistrate judge, defendant again addresses his belief of the "civil disobedience aspects of this case", which is of a "political nature." Dkt. 20, p. 7. Defendant also characterizes his behavior underlying his charges as "fearless", and a product not of "unsound mind" but rather a "high-minded philosophy superior to what is currently embraced by the establishment and reflected in its laws." Ibid. Defendant further discusses his use of "the proceedings as a platform for putting forth his beliefs." Dkt. 20, p. 8.

### IV.    LEGAL STANDARD

"Competency is defined as the ability to understand the proceedings and to assist counsel in preparing a defense." United States v. Dreyer, 705 F.3d 951, 961 (9th Cir. 2013) (citing Dusky v. United States, 362 U.S. 402 (1960) (per curium)). If there is reasonable cause to believe that the defendant "may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense" then the court shall hold a hearing to determine the mental competency of the defendant. 18 U.S.C. § 4241(a). Prior to convening such a hearing, "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court." 18 U.S.C. § 4241(b).

"The general rule is that whenever there is a good faith doubt as to a defendant's competency a hearing is required. Smith v. YIst, 826 F.2d 872, 877 (9th Cir. 1987). In order to "determine the need

---

[3] With respect to the government's page citations to defendant's letters, it relies on the page identified by ECF when the complete document is filed, and not the page identified within the letter itself.

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION
TO DETERMINE DEFENDANT'S COMPETENCY AND (2)
COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED.
R. CRIM. P. 12.2(c)(1)(A)

7

for a hearing the trial court must look at the record as a whole and accept as true all evidence of possible incompetence." Id., (citing to Chavez v. United States, 641 F.2d 1253, 1258 (9th Cir. 1981)). Where evidence before the court provides a "reasonable ground" for believing that the defendant is incompetent, then that court should order his examination to assist with its competency analysis. United States ex rel. Roth v. Zelker, 455 F.2d 1105, 1108 (2nd Cir. 1972).[4] In fact, "[i]n determining whether a defendant" is competent, "a court must consider a number of factors, including: 'evidence of a defendant's irrational behavior, . . . and any prior medical opinion on competence to stand trial." United States v. Leggett, 162 F.3d 237, 242 (3rd Cir. 1998). On this end, Federal Rule of Criminal Procedure 12.2(c)(1) provides: "The court may order the defendant to submit to a competency examination under 18 U.S.C. § 4241."

## V.   ARGUMENT

Based on the defendant's actions and statements dating from as far back to the 1990's through last month, including his repeated suicidal ideations, depression, and apparent lack of comprehension or foresight regarding the consequences of his actions, there exists reasonable cause to believe that he may presently be suffering from a mental disease or defect that renders him incompetent to understand the nature and consequences of the proceeding against him and to assist counsel with his defense. The United States believes that the proper course of action is therefore to order that a psychiatric or psychological examination be completed to help determine the defendant's competency. In fact, since the court must "accept as true all evidence of possible incompetence", a "good faith doubt" about defendant's competency, as set forth in the record, has well been established and a competency examination followed by a hearing is required. Smith, 826 F.2d at 877.

The government recommends that the Court order an evaluation to be conducted by a licensed or certified psychiatrist or psychologist employed by the United States Bureau of Prisons (BOP), pursuant to 18 U.S.C. § 4247(b). That statute provides for a period of up to 30 days (with a possible extension of up to 45 days) for a custodial evaluation, with the opportunity "to observe and evaluate the defendant."

---

[4] In fact, when substantial evidence exists that a reasonable judge would harbor a genuine doubt about a defendant's competency, then the court must order a competency hearing sua sponte. United States v. Garza, 751 F.3d 1130, 1134 (9th Cir. 2014). Relevant evidence falls into three broad categories: medical history, the defendant's behavior in and out of court, and the defense counsel's statements about defendant's competency." Ibid.

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION TO DETERMINE DEFENDANT'S COMPETENCY AND (2) COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED. R. CRIM. P. 12.2(c)(1)(A)

8

Pursuant to 18 U.S.C. § 4247(b), this Court may order an examination by "more than one such examiner." A custodial evaluation is preferable to a local evaluation, because: BOP regularly employs highly competent forensic psychologists and psychiatrists who perform an extremely comprehensive competency evaluation; the 30-day evaluation allows the psychologists and psychiatrists to evaluate the defendant's interactions with other inmates, staff members, and observe behavior in a variety of settings; and it is difficult for an inmate to malinger or exaggerate mental health conditions over a longer time period, instead of a 2-hour interview as part of a local evaluation; and the nearest BOP Forensic Study Sites capable of conducting the necessary evaluation are understood to be in Los Angeles and San Diego, California, and Seattle, Washington.

The United States further requests that time be ordered excluded under 18 U.S.C. § 3161(h)(1)(A) (providing for exclusion of time within which trial must commence for "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant"), through the date of the Court's ultimate competency hearing for the defendant. See United States v. Miranda, 986 F.2d 1283, 1294–85 (9th Cir. 1993) (holding that § 4241(a) time limits for competency evaluation do not limit excludable time for competency examinations under § 3161(h)(1)(A), and upholding exclusion of 106 days in which defendant's mental competency evaluation report was under preparation); accord United States v. Daychild, 357 F.3d 1082, 1094 (9th Cir. 2004).

## VI.    CONCLUSION

For all of the foregoing reasons, the United States requests that the Court order the defendant to submit to an examination to determine his competency to stand trial, conducted by licensed or certified psychiatrists or psychologists at the United States Bureau of Prisons.

Dated:  May 19, 2021

PHILLIP A. TALBERT
Acting United States Attorney

By:  /s/ BRIAN W. ENOS
BRIAN W. ENOS
Assistant United States Attorney

UNITED STATES' MOTION FOR (1) MENTAL EXAMINATION TO DETERMINE DEFENDANT'S COMPETENCY AND (2) COMPETENCY HEARING UNDER 18 U.S.C. § 4241 AND FED. R. CRIM. P. 12.2(c)(1)(A)

9