WANGER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Peter M. Jones, Esq. SBN# 105811

Attorneys For: Defendant, Nathan Daniel Larson

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>vs.<br><br>NATHAN DANIEL LARSON<br><br>                         Defendant | Case No.: 1:21 CR 00022-NONE-SKO<br><br>**DEFENDANT'S RESPONSE TO THE UNITED STATES MOTION FOR A MENTAL EXAMINATION AND COMPETENCY HEARING; NOTICE OF INTENT TO ASSERT AN INSANITY DEFENSE PURSUANT TO FRCP RULE 12.2; AND DECLARATION OF PETER M. JONES** |

TO THE HONORABLE DALE A. DROZD, UNITED STATES DISTRICT COURT JUDGE; PHILLIP A. TALBERT, ACTING UNITED STATES ATTORNEY; AND ASSISTANT UNITED STATES ATTORNEY BRIAN W. ENOS: Defendant, NATHAN DANIEL LARSON, hereby submits his Response to the United States Motion for (1) A Mental Examination to Determine Defendant's Competency and (2) For a Competency Hearing Under 18 U.S.C. § 4241 and Federal Criminal Procedure 12.2(c)(1)(A).

Notwithstanding Defendant's pending motions (handwritten and verbal) for a "Faretta Hearing", Defendant, by and through counsel, joins in the Government's motion to have him evaluated for competency.

Mr. Larson has made his personal position known to the court: He does not believe a psychiatric examination is warranted as he does not believe he is presently, legally incompetent to effectively challenge the charges against him. He has moved to exercise his constitutional right to represent himself, asserted that his counsel is unwilling to file the motions he believes are in the best interest of himself and the cause he is promoting, and would best be served by proceeding pro se. Mr. Larson has also stated for the record that he wants to exercise his constitutional right to a speedy trial.

The very recent case of *United States v. Quintero*, 2021 U.S. App. Lexis 12781, __F.3d __; 2021 WL 1682260 (9th Cir.), addressed the issue of defense counsel's responsibility to raise a doubt as to competency notwithstanding the conflict it may create with his or her client's position or beliefs.

"Defense counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired…a failure to raise competency with the court may deprive a defendant of effective assistance of counsel….But the possibility that counsel's client may have to be hospitalized to verify her mental competence does not present a real conflict of duties: temporary confinement is a consequence of counsel's duty to raise the mental stability of his client".

The Government has presented the court with a broad psychiatric history of the defendant dating back to age 15 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

{8694/002/01249725.DOCX}                                    2
**DEFENDANT'S RESPONSE TO THE UNITED STATES MOTION FOR A MENTAL EXAMINATION AND COMPETENCY HEARING; NOTICE OF INTENT TO ASSERT AN INSANITY DEFENSE PURSUANT TO FRCP RULE 12.2; AND DECLARATION OF PETER M. JONES**

[Lines 1–22 redacted]

The Government, by their motion, understandably appears to seriously question these prior conclusions regarding Mr. Larson's mental condition; and it would be a dereliction of duty for defense counsel not to fully explore, in the preparation of his or her client's defense, the panoply of symptoms of a serious mental illness consistently presented by Mr. Larson since well before adulthood. Although the frequent focus of competency examinations is on the degree of

understanding by a defendant of the charges he or she is facing, the roles of the lawyers, court and jury, and the procedural path a criminal case generally takes; it is the second criteria of the statute that more often than not represents the greater detriment to receiving effective representation: Is the defendant able to properly assist their attorney in their own defense?

In *Untied States v. Rodman*, 446 F. Supp. 2d 487; 2006 U.S. Dist. Lexis 62462, the defendant, whose case bore a striking similarity to Mr. Larson's prior federal indictment, had been ordered to be examined for competency.

Mr. Rodman, 38 at the time of his indictment in 2006, had a history of psychiatric issues he had been periodically hospitalized for, over the prior 16 years. In spite of this fact he was able to graduate from college in 2000 with a Bachelor of Arts degree in religious studies and philosophy. Between 1990 and 2005 he had been arrested for threatening a fellow student (1998) and sending threatening communications to United States Senators (2003). On December 30, 2005 he sent two email messages, which he signed, to then President George Bush, threatening to kill him by shooting him between the eyes—an act for which he would have no remorse. He also, in the same emails, threatened to kill several of President Bush's cabinet members. There were no known prior instances where Mr. Rodman had actually been physically violent.

Several of his prior evaluations resulted in various diagnoses of schizophreniform disorder and bipolar disorder with psychotic features.

Initially defendant Rodman, through counsel, requested that a psychiatric evaluation be performed to determine whether he was competent to stand trial, sane at the time of the offense, in need of treatment, and/or suffering from diminished capacity (significantly, these were requests Mr. Rodman himself did not personally agree with).

Dr. Robert G. Lucking, staff psychiatrist from the Federal Medical Center at Butner, conducted an evaluation with the assistance of a staff psychologist, the Forensic Team, and Correctional and Mental Health Staff. Dr. Lucking found that Mr. Rodman was not competent to proceed to trial, that he should be forcibly medicated, that he was not criminally responsible for his behavior and was suffering from diminished capacity at the time of the offense.

Relying on this report, the court found Mr. Rodman incompetent to stand trial:

"Dr. Lucking's report noted that Mr. Rodman's intelligence tested in the above average range. Initially, Dr. Lucking found Mr. Rodman's conversations to be linear, logical, and goal oriented; however, upon further testing and observation, Dr. Lucking found that Mr. Rodman was completely in the thrall of a complex paranoid delusional system. Mr. Rodman's core belief is that he is being persecuted by an interconnected group of governmental agencies which are engaged in criminal civil rights violations against him as the result of his expression of his unpopular political views…Mr. Rodman claimed that the purpose of the alleged threatening emails was a form of political protest against the civil rights crimes he believes were being committed against him. In his report, Dr. Lucking determined that Mr. Rodman 'possesses an adequate and factual understanding of the charges against him, has an adequate understanding of the pleas available to him and the consequences of each, understands the seriousness of his legal difficulty at this time, understands the roles and functions of the courtroom personnel…and exhibits a reasonable understanding of the adversarial nature of the courtroom proceedings;' however, Dr. Lucking ultimately determined that Mr. Rodman is not competent to stand trial because he will not be able to assist in his defense. Dr. Lucking explains: 'Mr. Rodman's delusional system is extensive and pervasive. He is likely to incorporate additional individuals into his delusional system when they do not agree with his assessment of his situation or when they do not act in a manner consistent

with his expectations…There are major psychiatric symptoms currently present which would prevent him from working with his attorney to plan a legal strategy. Mr. Rodman's perceptions are significantly distorted by his underlying delusional beliefs; and he is basing decisions and judgments on his delusional beliefs. Mr. Rodman appears to have the ability to engage in a forthright and candid relationship with his attorney based upon his interaction with the primary evaluator. This will be of little value due to his preoccupation with his delusional beliefs to the point where he is unable to interact on reality based issues….It is also our opinion that Mr. Rodman does not have the capacity to testify adequately in his own behalf if it should be decided that he should do so. In summary, it is the opinion of the Forensic Team that while Mr. Rodman is able to understand the nature and consequences of the proceedings against him, he is **unable,** as a result of his mental illness, to assist properly in his defense'." (Emphasis in original).

The court found, "…he is certainly an intelligent man with an accurate understanding of the nature and consequences of a federal criminal proceeding. The court finds, however, that Mr. Rodman's paranoia and delusional beliefs caused by bipolar type schizoaffective disorder are so pervasive and consuming as to make him incompetent to assist in his own defense."

The charges Mr. Larson is facing carry a potential sentence that could keep him in prison for the rest of his life. His long psychiatric history and many of the features of the alleged offense raise the specter of a serious mental illness. While Mr. Larson has expressed his opposition to being evaluated for any legal purpose, it is clear such an evaluation needs to be conducted not only to attempt to determine his ability to work with defense counsel or act as his own counsel, but for the additional purpose of assessing the presence of a mental defense.

While the Government has opined a confidence in the psychiatric staffing at the Bureau of Prisons, there is always the concern that a bias exists in light of the relationship between the

Government, the prison system and in-house experts. Having said that, Mr. Rodman was evaluated thoroughly by a team of experts that worked for the BOP, and rendered what would appear to be an independent and well-reasoned diagnosis. Should the court agree with the Government's position, an assignment to Dr. Lucking and the team at Butner would allay for the most part, defense concerns regarding impartiality. In the alternative an independent expert could be appointed to do the necessary assessments as noted in Counsel's Declaration below.

Additionally, defendant Larson by and through his attorney, hereby provides notice pursuant to FRCP Rule 12.2, of his intent to assert a defense of insanity, and requests that he be examined pursuant to 18 U.S.C. 4242(a). This examination can occur at the same time the evaluation for his competency is conducted.

DATED: June 2, 2021          **WANGER JONES HELSLEY PC**

/s/ *Peter M. Jones*
Peter M. Jones, Attorney for
Defendant, NATHAN DANIEL LARSON

## DECLARATION OF PETER M. JONES

I, Peter M. Jones, declare as follows:

1. I am an attorney admitted to practice before this court, and am counsel of record for Nathan Daniel Larson, the Defendant in the above entitled action, having been appointed to represent him on March 1, 2021.

2. Mr. Larson has previously, on his own motion, moved the court to conduct a "Faretta Hearing" in order to represent himself on his pending indictment.

3. On April 30, 2021 the Government expressed their intent to file a motion challenging Mr. Larson's competency. A hearing date for that motion was set for June 17, 2021. Mr. Larson submitted a handwritten motion to proceed pro se on the issue of, and at the hearing on, the Government's motion to challenge his competency. The court denied this motion.

4. After a review of the currently available information regarding Mr. Larson's psychiatric history coupled with the circumstances of the alleged offenses and my own interactions with and observations of him, I believe it is necessary to have the defendant evaluated for present competency to stand trial and to further examine him for the defenses of legal insanity and/or diminished capacity.

5. I am requesting that the forensic team at Butner Federal Correctional Complex, led by Dr. Robert Lucking, be appointed to conduct these examinations. Mr. Larson's lengthy history of psychiatric symptoms would best be served by the multiple services offered at this particular institution. Additionally, Butner previously treated Mr. Larson's uncle, Frank Van Shaddle, and would likely have a family history available for reference. The offenses Mr. Larson has been charged with place him in a particularly vulnerable position that the federal complex at Butner is,

arguably, best suited to address. Also, Mr. Larson's parents, if needed for consultation, live within approximately 200 miles of that location.

6. In the alternative, at the Court's discretion, I have contacted a local forensic psychiatrist, Dr. A. A. Howsepian, M.D. PhD., who is associated with the Eastern District Federal Panel, and he is willing to perform the examinations being requested if called upon to do so.

I declare under penalty of perjury that the foregoing is true and that this declaration was executed in Fresno, California on June 2, 2021.

/s/ *Peter M. Jones*
PETER M. JONES, Attorney for
Defendant, NATHAN DANIEL LARSON