UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

```
UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )   No. 21-CR-22-NONE
                             )
vs.                          )   MOTION FOR COMPETENCY
                             )
NATHAN DANIEL LARSON,        )
                             )
            Defendant.       )
_____)
```

Fresno, California                        Friday, June 11, 2021


REPORTER'S TRANSCRIPT OF PROCEEDINGS




**APPEARANCES OF COUNSEL**:


For the Plaintiff:      United States Attorney's Office
                        BY: **BRIAN ENOS**
                        2500 Tulare Street
                        Suite 4401
                        Fresno, California 93721


For the Defendant:      Wanger Jones Helsley
                        BY: **PETER JONES**
                        265 East River Park Circle
                        Suite 310
                        Fresno, California 93720


REPORTED BY:  KAREN HOOVEN, RMR, CRR, Official Court Reporter

Proceedings recorded by mechanical stenography, transcript produced by computer aided transcription.

```
 1  Friday, June 11, 2021                           Fresno, California
 2  10:32 a.m.
 3          THE CLERK:  Calling case 21-CR-22.  United States
 4  versus Nathan Daniel Larson.  Set for motion for competency.
 5          THE COURT:  Please state your appearances, beginning
 6  with counsel for the government.
 7          MR. ENOS:  Good morning, Your Honor.  Brian Enos,
 8  United States.
 9          MR. JONES:  Peter Jones for Nathan Larson.  We are
10  appearing via video conferencing over Mr. Larson's strenuous
11  objection.
12          THE COURT:  And counsel, I'm not sure if you've taken
13  a look at this.  I have not had the opportunity to study it in
14  any comprehensive way, but it appears to me that the CARES Act
15  of 2020 with respect to authorization of remote appearances is
16  really in various criminal pretrial matters has no application
17  to this particular proceeding, a motion of this nature brought
18  on behalf of the government.  That is a long way of saying I
19  don't think that I need to take a waiver nor do I think I need
20  the defendant's consent to conduct these proceedings by way of
21  video appearance.
22          The CARES Act authorizes video appearance, video and
23  telephonic appearance for a great number of proceedings even
24  on the Court's own motion without consent.  Consent is
25  required only for specified proceedings, for the most part
```

1  changes of plea and sentencing.
2      Is the government's position any different from that?
3      MR. ENOS:  No, Your Honor.  Although I've not
4  analyzed that issue prior to today's appearance.
5      THE COURT:  Mr. Jones, I will get to that in a
6  moment.  I know that Mr. Larson, he's filed a number of
7  documents with the Court, which I very perfunctorily have
8  reviewed and have not read from cover to cover.  Because he is
9  represented by counsel.  And so he has no right to file
10 documents on the docket.  I believe that those filings have
11 all been forwarded to you as his counsel of record.  I don't
12 know if Mr. Enos has even received or seen those documents.
13 There have been many.
14     In them, it's clear that Mr. Larson is expressing
15 that he is desirous of an in-person appearance before the
16 Court on an -- without masking of any of the participants in
17 the courtroom hearing and that he objects to any proceedings
18 being conducted either by video or in person with individuals
19 wearing masks.  But in my view, he's represented by counsel.
20 And for that reason, it's inappropriate for his filings to be
21 filed on the Court's docket.
22     Anything you wanted to say in that regard, Mr. Jones?
23 You're muted, sir.
24     MR. JONES:  Yes.  Mr. Larson has sent to the Court
25 numerous letters and motions.  And I have received some.  And

1 the Court has forwarded the ones that it has received to me.
2 One foundational motion, I'll call it, was his motion to have
3 a *Faretta* hearing and his interest in proceeding in his case
4 pro se.  And the Magistrate Judge McAuliffe indicated that the
5 competency hearing would have to proceed before a decision was
6 made regarding that or taking that up any further.  And I see
7 these individual motions of my client are contingent, I think,
8 on that frankly.  I have no objection to interposing his
9 objection to appearing via video conferencing, however, for
10 the record.  However, I do not personally see a legal route to
11 support that at this time.
12          THE COURT:  All right.  Well, my view -- and I've
13 been provided no authority to the temporary -- is that no
14 consent is required of the defendant to proceed by way of
15 video conference with the motions that have been filed at this
16 time and that are on the Court's calendar for hearing today.
17          THE DEFENDANT:  Your Honor.
18          THE COURT:  I'm sorry.  Did somebody say something?
19          THE DEFENDANT:  Your Honor, I had public trial
20 concerns regarding holding the hearing by Zoom.  It's my
21 understanding that the hearing is not open to the public.  Is
22 the public able to view this?
23          THE COURT:  There is a public line, Mr. Larson.  The
24 public is able to listen to these proceedings.  But this is
25 also not a trial.  This is a hearing on a pretrial motion.  So

1  you can see on your screen, or at least the rest of us can, I
2  believe you probably can if you're in gallery view, that there
3  is a public line for people -- the public can always call in
4  and listen to the Court's proceedings.
5            THE DEFENDANT:  Oh, and this is published on the
6  Court website or someplace like that?
7            THE COURT:  It's always -- the public dial in number
8  is always listed on the Court's calendar that appears every
9  day for the Court proceedings.  So that number is publicized
10 right on the public calendar as to how the public can call in
11 and listen.
12           THE DEFENDANT:  Thank you for that information.
13           THE COURT:  All right.  So -- and I think just for
14 purposes of the record, the courthouses of the Eastern
15 District of California remain closed to the general public as
16 of today's date.  There will be a phased in re-opening which
17 will begin next week after certain changes come to pass under
18 state law, state orders of the governor in California next
19 week.
20           However, there will continue to be Coronavirus
21 precautions being taken even during live proceedings.  And due
22 to many Coronavirus related issues, including staffing, the
23 Court is still authorized under the CARES Act to conduct video
24 proceedings and will do so in the Fresno courthouse with
25 respect to criminal matters for a number of weeks after next

1 week.  The date of return to full calendars on an in-person
2 basis is still yet to be set.  But we will phase in.
3       In cases where individuals do have a right to an
4 in-person appearance before the Court, those are being
5 accommodated on a case-by-case basis where the defendant
6 declines to waive their appearance.  I don't think a pretrial
7 motion, such as this, is one of those in which I require the
8 defendant's consent to proceed and I, therefore, intend to
9 move forward with the government's pending motion.  And I
10 actually think there's a defense motion as well.
11       The government's motion is for a mental examination
12 to determine defendant's competency and for competency hearing
13 thereafter.  The defense has responded to that motion and also
14 provided separate notice.
15       THE DEFENDANT:  Your Honor.
16       THE COURT:  I'm sorry.  Mr. Larson, I'm not going to
17 be interrupted by you.  You have counsel in these proceedings,
18 Mr. Jones.  If you wish to speak with him, I will provide you
19 an opportunity in a break out room to speak with him if
20 there's something that you would like him to raise with me.
21 But you are represented by counsel.  I'm going to be
22 discussing the pending motion with your counsel, not with you.
23       THE DEFENDANT:  May I have a break out then?
24       THE COURT:  Madam clerk, please give Mr. Jones and
25 Mr. Larson a break out room so they can have a discussion.

1   THE CLERK: Yes, judge.

2   THE COURT: Thank you.

3   (The defendant and Mr. Jones went to a breakout room.)

4   THE COURT: All right. Mr. Larson and his attorney,
5   Mr. Jones, are back with us. Mr. Jones, anything you need to
6   state on the record before we address the pending motion?

7   MR. JONES: Yes. Thank you. Mr. Larson wanted to
8   have the record reflect that his counsel, myself, has not
9   provided him with a copy of my response on his behalf to the
10   government's motion or my declaration of an intent to pursue
11   an insanity defense. He wants it on the record that he
12   believes that's a violation of his due process rights. And I
13   informed him he would receive all copies of all motions, but
14   not at this time. However, it would be after any evaluations
15   are done.

16   THE COURT: Mr. Enos, anything that you wanted to add
17   with respect to your pending motion?

18   MR. ENOS: No, Your Honor. I presume the Court has
19   had an opportunity to read the motion as well as preview the
20   five exhibits. With that being said -- oh, one thing, just to
21   the extent it makes things -- well, I'll wait on anything
22   else. The government welcomes any questions the Court may
23   have above and beyond the government's motion and attachments.

24   THE COURT: I do not. Mr. Jones, anything you wanted
25   to add?

1    MR. JONES:  Well, I think my response covers
2 everything I would be requesting and suggesting by way of an
3 examination.  If there's further discussion necessary, I'm
4 ready and prepared to proceed with that discussion.  We've
5 asked that -- we have a contacted a local psychiatrist, as
6 I've indicated, who could provide the requested examinations.
7 Mr. Enos has asked for the Bureau of Prisons to conduct the
8 examinations, at least initially.
9    And if that's the Court's decision, we made a request
10 for Butner even though it's not the closest, obviously.  With
11 an evaluation under 12.2, it allows up to 45 days plus 15.
12 That's 60 days.  And there are, I think, appropriate reasons
13 why we've requested that particular location.  And I believe
14 that would be enough time for transportation and to provide
15 the examinations for both purposes that we are requesting.
16    So essentially we're joining with the government's
17 request for a competency evaluation and we are requesting a
18 12.2 examination.  And we are requesting that this -- if the
19 Court is going to have the Bureau of Prisons perform that
20 function, at least initially that it would be at Butner.
21 That's our request.
22    THE COURT:  Well, I find that the motion that is
23 before me is quite well supported.  That there is no doubt in
24 my mind, based upon what's been submitted, that Mr. Larson
25 should be committed for purposes of a mental examination to

1  determine his competency to stand trial and to assist his
2  counsel in his defense.  My -- I think that's been
3  overwhelmingly established as appropriate in this case.  My
4  only questions have to do with the specific order that should
5  issue to bring that about.
6        Mr. Enos, first, does the government have any comment
7  about the defense request that if such an examination is to be
8  conducted by Bureau of Prisons psychologist and psychiatrist,
9  that it be conducted at the Bureau of Prisons facility in
10 Butner, North Carolina?
11       MR. ENOS:  I do, Your Honor.  And what I did was this
12 past Wednesday, I exchanged voicemail messages with a deputy
13 regional counsel within the Bureau of Prisons who works out of
14 the Stockton area.  And he said it would be best if the Court
15 did not designate a particular facility in its order for a
16 mental competency examination, because what they do -- what
17 that does is it enables the Bureau of Prisons to send, in this
18 case, Mr. Larson, to an evaluation site that's most
19 immediately available based on the most -- the largest amount
20 of available beds.
21       He also said that the west coast alone has certified
22 psychiatrists and psychologists at facilities in San Diego,
23 Los Angeles and Seattle.  So if the Court does not designate a
24 location, then it would be better equipped to have Mr. Larson
25 examined in a timely manner.  And in light of how the statute

1 is structured, I think timeliness is something that should be
2 considered when the Court makes its determination with respect
3 to location.
4      THE COURT: Mr. Jones, any response? I understand
5 why you've suggested Butner. And on the other hand, the
6 reason that I asked Mr. Enos is, based upon my experience, as
7 a District Judge in these matters, I too have spoken to the
8 same regional official and worked with Bureau of Prisons in
9 these matters and know that, especially over the last year or
10 so, with issues regarding transportation, that there's been
11 quite a backup and quite a demand on Bureau of Prisons. And
12 so I'm a bit reluctant to do anything that could slow down
13 this process because it is one that, unfortunately, I've seen
14 slowed down in the past.
15      I'd rather give them the flexibility and hope that
16 they can just transmit the information and that the
17 professionals at the various Bureau of Prisons facilities can
18 work together based upon my discussions with them in the past,
19 I think they do coordinate their efforts where it's
20 appropriate and that they do share information with one
21 another. But I'm reluctant to recommend the Butner facility
22 for that reason. Anything you wanted to say on the record?
23      MR. JONES: I know the Court could, if I'm reading
24 the statute correctly, appoint two evaluators, I assume
25 that -- I don't know if that means two within BOP or if there

1   could be one outside of BOP.  The time frame, I know, would be
2   problematic if Mr. Larson were transported to a BOP facility.
3   However, that's why I suggested perhaps a local psychiatrist
4   instead of BOP altogether.  And I don't know if that's an
5   option to this Court, but --
6           THE COURT:  I'm going to get a BOP evaluation.  If,
7   after we get that evaluation --
8           THE DEFENDANT:  Your Honor, may I confer with
9   counsel?
10          THE COURT:  Because I'm not going to grant that
11  request.
12          THE DEFENDANT:  I have concerns, though, about my
13  *Faretta* rights.  I was told that even though in the chicken
14  and egg tension between *Faretta* rights and competency issues,
15  that competency issues must be resolved first.  My desire was
16  to represent myself in the competency proceedings.  And I was
17  told that I would at least have my views heard and taken into
18  account during these proceedings even though counsel would
19  still be representing me.  Therefore, I object to the fact
20  that the Court has not completely read my filings, for
21  example.
22          THE COURT:  Well, Mr. Larson, I'm not going to read
23  your filings from cover to cover, in part because they're
24  extremely voluminous.  But for another reason, you're
25  represented by counsel in these proceedings.  I'm going to get

1   a competency determination.  Once we get that competency
2   determination made, if you still wish to represent yourself,
3   the Court will consider that issue if it's appropriate at that
4   time.
5           But at this stage of the proceedings, while you can
6   generally express objection or concerns that you have, you do
7   not have a right to file unlimited numbers of documents.  And
8   actually, you have no right, in the Court's view, to file
9   documents on the public docket.  If you file a -- if you
10  submit a document, my intention is to forward it to your
11  counsel.  Mr. Jones is advising me of where he's requesting
12  something that you disagree with or object to.  And I
13  understand that.  But we've got to get these things
14  accomplished in the order that you've already set out that you
15  understand.  And that is the order that we're going to proceed
16  in.
17          All right.  Mr. Jones -- first, Mr. Enos, do I have a
18  proposed order from the government with respect to the
19  language of the referral?
20          MR. ENOS:  I did not file one, Your Honor.  I do have
21  a template from a colleague in a separate district that I
22  could modify and send to the Court if the Court would like.
23          THE COURT:  What I just want to make sure is that you
24  and Mr. Jones -- rather than for me to use an order that
25  essentially is in keeping with prior orders of the Court, if

1 there are specific concerns to this case, given the notice
2 filed by Mr. Jones, given what the government has moved for.
3 If the two of you could meet and confer regarding any specific
4 or different terms that might apply in this case that
5 otherwise wouldn't apply, I at least would like your input to
6 make sure that I address each concern in the order of the
7 referral.
8 　　　　　I don't want any questions because I want Mr. Larson
9 to -- I mean, he's made it clear.  He objects to this.  And I
10 don't want it to be delayed any more than necessary.  So I'd
11 like to make sure that the order that I issue, which I'll
12 issue very quickly, addresses all of the circumstances that
13 both of you feel are raised by this particular case so that
14 nothing is delayed.  Or at least that we do everything that we
15 can here at the outset to make sure that we move this forward
16 as quickly as possible in light of the defendant's personal
17 objections to the procedure.  All right?
18 　　　　　So I would like you to meet and confer after this
19 hearing and submit to the Court a proposed order -- unless you
20 meet and confer and say, "Judge, we don't think there's
21 anything unusual.  If you issue the order that you've
22 indicated you're willing to issue, that will be fine."  That's
23 okay too.  I just don't want to overlook anything.
24 　　　　　MR. ENOS:  That's fine, Your Honor.  I'll prepare a
25 draft order and email it to Mr. Jones late today.  No later

1   than Sunday, but I'll try to do it late today.  I just have a
2   meeting in an agency about an undercover operation that's soon
3   to start.  And I'm happy to do that.  I think the order would
4   need to contemplate both an examination for competency as well
5   as insanity at the time of the --
6           THE COURT:  That's what I was referring to.  I want
7   to make sure that I cover everything in the order.  I don't
8   want to leave anything out.
9           MR. ENOS:  Yeah, that's fine.  So I'm happy to
10  prepare a draft and send it to Mr. Jones for his review and
11  input as well.
12          THE COURT:  Agreeable, Mr. Jones?
13          MR. JONES:  Yes.
14          THE COURT:  All right.  Anything else we need to talk
15  about?  Other than I -- how far out do you think we should set
16  a status conference back before me?
17          MR. ENOS:  I think it's sensible, Your Honor, to set
18  out a status 45 to 60 days out, just to give us a chance, a
19  fighting chance, at least, to have the competency exam take
20  place and hopefully get a report by then.  Even if not, I
21  think it would still prove fruitful to have a status
22  conference before Your Honor just so we can assess where we
23  are.
24          And the government notes that the current time waiver
25  only started until this hearing today.  It was actually going

1 to be until the 18th, but this hearing was advanced to today,
2 June 11th.  So the government would ask that a time waiver be
3 ordered until the status conference pursuant to both
4 subdivisions (h)(1)(A), which relates to competency issues, as
5 well as (h)(7)(A), the ends of justice provision within the 18
6 USC 3161.
7      THE COURT:  Mr. Jones, your position both with
8 respect to the date of a status conference as well as the
9 issue of excludable time?
10      MR. JONES:  I believe the 45 to 60 days would be
11 standard.  And as far as excludable time goes, that's already
12 been agreed to I think.  Not by Mr. Larson, but --
13      THE COURT:  Right.  Madam clerk, somewhere between 45
14 and 60 days out for status conference.
15      THE CLERK:  I'm looking at July 30th or August 6th.
16      MR. ENOS:  You know, Your Honor, already I've kind of
17 blown it here.  I note that just pursuant to a peculiarity in
18 my schedule, I'm out July 30th and the 6th and the 13th.  If
19 it's going to be Friday.  I am available July 23rd or August
20 20.  Just in light of sending kids to college and one last
21 vacation before he goes.  So my apologies for that.  But the
22 23rd will work for me of July or August 20th if it's on a
23 Friday.
24      THE COURT:  Mr. Jones, any preference?
25      MR. JONES: I'm taking a look here.  So July 23rd or

1  what was the other option?
2         MR. ENOS:  August 20th if it works for the Court.
3         MR. JONES:  August 20th.  That would be more than 60
4  days?
5         THE COURT:  It would be.
6         MR. JONES:  And what time on July 23rd would that?
7         THE COURT:  Right now we'd set it for 8:30.  It's
8  possible that it will be pushed back to 9:30 if we're still
9  operating by way of video at that time.  It's still up in the
10 air.
11        MR. JONES:  Well, we can set it for July 23rd at
12 8:30.  And if more time is needed there statutorily, there
13 would be more time allowed.  Under --
14        THE COURT:  Yes.
15        MR. JONES:  For what I'm asking.
16        THE COURT:  Let's set July 23rd at 8:30 a.m. for
17 status conference.  The Court finds the time from today's date
18 through that July 23rd status conference date excludable under
19 18 USC Section 3161(h)(1)(A) and (h)(7)(A), Local Codes A and
20 T.
21        THE DEFENDANT:  Your Honor.
22        THE COURT:  Yes.
23        THE DEFENDANT:  What's your ruling on whether I have
24 a right to see the documents that my lawyer has filed on my
25 behalf?  Because I can't really speak to those or object to

1  them without having seen them?

2  THE COURT:  Mr. Jones has indicated that following
3  the competency determination, that he'll make all filings
4  available to you.  He's already indicated here on the record
5  that he has filed a response to the government's motion for a
6  competency examination that states that he believes that
7  that's appropriate.  And he's filed a notice of intent to
8  assert an insanity defense under Federal Rule of Criminal
9  Procedure 12.2.

10  THE DEFENDANT:  Okay.  But I'm not able to speak to
11  anything in those or put my arguments on the record.  What
12  about --

13  THE COURT:  Well, see, that's the thing.  At this
14  point, Mr. Larson, you have no right to put arguments on the
15  record.  You're represented by counsel.

16  THE DEFENDANT:  Well, what about my right to
17  effective assistance?  My right to due process?  I'm supposed
18  to be assisted by counsel, not overrode by counsel, you know.
19  That's why *Faretta* rights exist.

20  THE COURT:  Well, as Mr. Jones noted in his filing,
21  the Ninth Circuit has recently, in a case *United States versus*
22  *Quintero*, talked about this very subject at 995 F 3d 1044,
23  Ninth Circuit, 2021.  Finding that there is no conflict when
24  an attorney, in carrying out his or her duties on behalf of a
25  client, feels that it is in the client's best interest and

Case 1:21-cr-00022-JLT-SKO   Document 48   Filed 08/24/21   Page 18 of 18

18

1  necessary for their effective representation to be referred
2  for a competency evaluation.
3           So once I get the proposed order, I'll be granting
4  the motion for a competency examination with the Bureau of
5  Prisons.  Once we get that back, everyone can decide how they
6  wish to proceed and which issues are those that need to then
7  be taken up next.  Anything further in this matter then today?
8           THE DEFENDANT:  Your Honor, if I feel like my rights
9  are being violated, I might not submit to this evaluation.
10          THE COURT:  Anything else, counsel?
11          MR. ENOS:  No, Your Honor.  Thank you.
12          THE COURT:  Thank you.  Court will stand in recess.
13     (The proceedings were concluded at 11:08 a.m.)
14
15          I, KAREN HOOVEN, Official Reporter, do hereby certify
16  that the foregoing transcript as true and correct.
17
18  DATED:  18th of August, 2021       /s/  Karen Hooven
                                       KAREN HOOVEN, RMR-CRR
19
20
21
22
23
24
25