UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. JENNIFER L. THURSTON, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-CR-22-NONE |
| | ) | |
| vs. | ) | STATUS CONFERENCE |
| | ) | FARETTA HEARING |
| NATHAN DANIEL LARSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Fresno, California                    Friday, March 4, 2022


REPORTER'S TRANSCRIPT OF PROCEEDINGS




**APPEARANCES OF COUNSEL**:


For the Plaintiff:        United States Attorney's Office
                          BY: **BRIAN ENOS**
                          2500 Tulare Street
                          Suite 4401
                          Fresno, California 93721


For the Defendant:        Wanger Jones Helsley
                          BY: **PETER JONES**
                          265 East River Park Circle
                          Suite 310
                          Fresno, California 93720


REPORTED BY:  KAREN HOOVEN, RMR, CRR, Official Court Reporter

Proceedings recorded by mechanical stenography, transcript
produced by computer aided transcription.

1    Friday, March 4, 2022                Fresno, California

2    8:36 a.m.

3         THE CLERK:  The Court calls United States versus

4    Nathan Daniel Larson.  Case number 1:21-CR-22 scheduled for

5    *Faretta* hearing and a status conference.  And the jail has him

6    present, but we might have --

7         THE DEFENDANT:  Good morning.

8         THE MARSHAL:  Good morning.  Can you hear me?

9         THE DEFENDANT:  Perfect.  I'm just waiting for Larson

10    to approach.

11         THE MARSHAL:  Your Honor, we tried to put him in a

12    room with better connection, but due to Fresno County's policy

13    and procedures, he's refusing to wear a mask in that certain

14    area so we might have some connection and background noise due

15    to that issue.

16         THE COURT:  All right.  Thank you.

17         Mr. Larson, you are muted.  Could you unmute the

18    device or ask for assistance to unmute.

19         THE DEFENDANT:  Okay.

20         THE COURT:  All right.  Thank you.  Again, this is

21    United States of America versus Nathan Daniel Larson.  May I

22    have the appearances, beginning with the government.

23         MR. ENOS:  Good morning, Your Honor.  Brian Enos,

24    United States.

25         THE COURT:  And for the defendant.

3

1        MR. JONES:  Peter Jones for Nathan Larson, who is

2    present appearing from the jail.  And I would note I am

3    agreeing to appear via video conference, however Mr. Larson

4    has a standing objection regarding his personal appearance via

5    video conferencing.

6        THE COURT:  All right.  Thank you.  Mr. Enos, do you

7    have comments about the personal appearance?

8        MR. ENOS:  The personal appearance?  You mean with

9    respect to having a *Faretta* hearing in person?

10        THE COURT:  Right.

11        MR. ENOS:  Well, I think the Court can properly hold

12    the hearing now.  What I will say is with this case as much as

13    any I've had, I'm perpetually cognizant of the potential

14    appellate issues.  And if the Court, you know, might know

15    anything we don't with respect to the extent personal

16    appearance will be continuing in the near future, it may be

17    best to substantively address what would otherwise be

18    substantively addressed today in person to remove that

19    objection.

20        Other than that, I'm happy to proceed today.  And I

21    believe the Court is indeed authorized to proceed today in

22    light of the prior orders that has been set forth in this

23    district about COVID.

24        THE COURT:  All right.  Mr. Larson, I understand that

25    you have consistently objected to proceeding via video

1  conference.  And Mr. Jones has told me that you do still

2  object today.  Is that true, sir?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  First, I would note that this

5  is continuing under the CARES Act.  It's my understanding that

6  the extension will be issued pending the in-person

7  appearance -- waiving the in-person appearances until the end

8  of June.  And that order should be issued soon.

9          I find that there is a national state of emergency

10 that has been declared in response to the spread of the

11 Coronavirus.  For everyone's health and safety, the general

12 population of California had been under a gubernatorial order

13 to shelter in place.  The detention facilities have imposed

14 quarantines or restrictions on access to detainees for the

15 health of the detainees and the staff.  In particular, Mr.

16 Larson has been in quarantine for an extended period over the

17 last month or so.

18         The Judicial Conference of the United States has

19 determined conditions due to the national emergency are

20 materially affecting the functioning of the federal courts.

21 The Judicial Council of the Ninth Circuit has certified an

22 emergency condition existing in the Eastern District of

23 California which justifies the temporary suspension of the 70

24 day period to bring defendants to trial.  Public health

25 recommendations and restrictions have impacted this Court's

5

1    ability to function as it usually does to conduct in person

2    proceedings and have impaired the availability of counsel, the

3    Court staff to be present in the courtroom.

4         I note in particular that the Omicron surge has

5    increased the case load of COVID-19 dramatically in this

6    district; specifically Kern County and Fresno County, the

7    largest counties in this division, continue to be evaluated at

8    extreme high risk of infection to unvaccinated people.

9    Likewise, the cases in this area continue to be quite high

10   despite its recent reduction that -- I guess it's a decreasing

11   increase in case load.

12        Therefore, based upon the CARES Act, I find that the

13   use of video conferencing to conduct the sentencing

14   proceeding -- or I'm sorry, to can conduct this *Faretta*

15   hearing despite Mr. Larson's objection is in the interest of

16   justice and that utilizing video conferencing may prevent him

17   from remaining incarcerated longer than is necessary and will

18   satisfy the objectives of sentencing under the US Sentencing

19   Guidelines and 18 USC Section 3553(a).  In particular -- I'm

20   sorry, will satisfy the objectives of conducting a *Faretta*

21   hearing.

22        In addition, I would note that the Court does

23   continue to have a mask mandate in the courthouse.  And Mr.

24   Larson's refusal to wear a mask would impede his ability to

25   appear in person in the Court proceedings.  I find that the

1  proceeding today cannot be further delayed without doing

2  possible harm to the interest of justice.

3        All right.  Today we are on calendar for the *Faretta*

4  hearing and a status conference.  Mr. Larson, it's my

5  understanding that you wish to represent yourself.  Is that

6  right, sir?

7        THE DEFENDANT:  Yes, ma'am.  And by the way, have

8  members of the public been given an opportunity to attend this

9  Zoom video conference if they wish?

10        THE COURT:  Yes.

11        THE DEFENDANT:  Because in the past there have been

12  issues with my family being unable to join the Zoom call.

13        THE COURT:  Yes.  The public is -- the public line is

14  open and is active at this time.  So at this point, Mr.

15  Larson, I understand that your reasoning for wanting to

16  represent yourself is not because you feel that Mr. Jones has

17  not adequately represented you.  Is that true?

18        THE DEFENDANT:  I'm not sure what my opinion on that

19  is.

20        THE COURT:  All right.  Do you feel that you have

21  cause to have Mr. Jones relieved or are you simply wishing to

22  represent yourself?

23        THE DEFENDANT:  Well, in terms of replacing him with

24  other counsel, I'm not sure what the point would be because I

25  think deficiencies in representation by counsel are more of a

1   systemic issue than anything specific to him.

2           THE COURT:  All right.  I'm not sure I understand.

3   Do you feel that you have cause to have Mr. Jones removed?

4           THE DEFENDANT:  In a *Marsden* sense, no.

5           THE COURT:  All right.  So today let us go

6   through -- I'm going to be asking you some questions and

7   giving you some information, Mr. Larson, to make sure that you

8   wish to represent yourself.

9           First, you are charged with serious crimes.  And do

10  you know what those crimes are, sir?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Mr. Enos, for the record, would you go

13  through the charges and elements for Mr. Larson.

14          MR. ENOS:  I have the charges and the penalties in

15  front of me.  As far as the elements, I haven't done that in a

16  *Marsden* before.  But I guess I could read the indictment.

17          THE COURT:  All right.  Yes.

18          MR. ENOS:  All right.  With respect to Count One, it

19  is kidnapping and attempt and it carries a minimum 20 years in

20  prison, maximum up to life.  And it provides the defendant, on

21  or about December 14, 2020 in Fresno County, within the State

22  and Eastern District of California and elsewhere,

23  willfully and unlawfully seized, confined, inveigled, decoyed,

24  kidnapped, abducted and carried away a female minor victim who

25  hadn't turned 18.  And he traveled willfully in interstate

commerce to do so.  And he held her for ransom, reward and
other benefit while the defendant was over the age of 18 and
had no legal custody or familial relationship with the victim
and attempted to do so in violation of USC Section -- Title 18
USC Section 1201.

With respect to Count Two, transportation of a minor
with intent to engage in illegal sexual activity.  That's
under 18 USC 2423(a).  It carries a mandatory minimum of ten
years in prison and maximum up to life in prison.  And it
provides that Mr. Larson, on or about December 14th, 2020 in
Fresno County, within the State and Eastern District of
California and elsewhere, did knowingly transport a female
individual, Victim 1, who had not attained the age of 18 years
of age, in interstate commerce with the intent that such
individual engage in any sexual activity for which any person
can be charged with a criminal offense, all in violation of 18
USC 2423(a).

With respect to Count Three.  It alleges a violation
of 18 USC 2422(b), online coercion and enticement.  It carries
a mandatory minimum sentence of ten years in prison and a
maximum of life to prison.  It provides that defendant herein,
beginning on or about November 22, 2020 and continuing through
on or about December 14th, 2020 in Fresno County and the State
and Eastern District of California, the State and Eastern
District of Virginia and elsewhere, using facilities and means

1   of interstate and foreign commerce, did knowingly persuade,

2   induce, entice and coerce a female individual, Victim 1, who

3   had not attained the age of 18 years of age, to engage in

4   sexual activity for which any person can be charged with a

5   criminal offense, and attempted to do so, all in violation of

6   Title 18, USC Section 2422(b).

7           With respect to Count Four, it alleges violation of

8   18 USC Section 2251(a) and (e), sexual exploitation of a minor

9   and attempt.  That's our production of child pornography

10  charge.  It carries a mandatory minimum of 15 years in prison

11  and a maximum up to 30 years in prison.  And it provides --

12  the indictment charges that the defendant, beginning on a date

13  unknown but no later than approximately November 22, 2020 and

14  continuing through December 14, 2020, in Fresno County, State

15  and Eastern District of California, the State and Eastern

16  District of Virginia, and elsewhere, and through the use of a

17  Samsung tablet computer (manufactured in China), a Samsung

18  cellular phone (manufactured in China) and a website whose

19  Internet Protocol address resolved to a location in Europe,

20  did knowingly employ, use, persuade, induce, entice and coerce

21  a minor to engage in, and did transport this minor in and

22  affecting interstate commerce with the intent that this minor

23  engage in any sexually explicit conduct as defined in 18 USC

24  2256 for the purpose of producing any visual depiction of such

25  conduct, with knowledge and reason to know that such visual

depiction would be transported and transmitted using any means

or facility of interstate or foreign commerce or in or

affecting interstate or foreign commerce, and the visual

depiction was produced or transmitted using materials that had

been mailed, shipped or transported in and or affecting

interstate or foreign commerce by any means, including by

computer and cellular phone, and the visual depiction was

actually transported in interstate or foreign commerce using

any means or facility of interstate commerce, and attempted to

do so, all in violation of 18 USC Section 2251(a) and (e).

The last of the five counts alleges a violation of 18

USC Section 2252(a)(2), receipt and distribution of child

pornography.  It carries a mandatory minimum term of

imprisonment of five years and a maximum up to 20 years.  It

alleges in the indictment beginning on a date unknown but not

later than approximately November 22, 2020 and continuing

through approximately December 14, 2020, in Fresno County,

within the State and Eastern District of California, the State

and Eastern District of Virginia, and elsewhere and through

the use of a Samsung tablet computer, manufactured in China, a

Samsung cellular phone, also manufactured in China, a website

whose Internet Protocol address resolves to a location in

Europe, did knowingly receive and distribute at least one

visual depiction, the producing of which involved at least one

minor engaging in sexually explicit conduct and which

1    depiction was of such conduct, as defined in 18 USC 2256, and

2    which had been shipped or transported in or affecting

3    interstate or foreign commerce, had been sent or received

4    using any means or facility of interstate or foreign commerce,

5    and which contained materials which had been mailed, shipped

6    or transported in interstate or foreign commerce by any means,

7    including by computer, all in violation of 18 USC 2252(a)(2).

8            THE COURT:  All right.  Thank you, Mr. Enos.

9            Mr. Larson, do you understand each of those charges?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Mr. Enos went through the maximum

12   penalties.  He mentioned only the terms of imprisonment that

13   could be imposed.  I want to be sure you understand there are

14   other consequences.

15           As to Count One, the maximum penalty, as Mr. Enos

16   indicated, is a mandatory minimum of 20 years in prison and a

17   maximum of life in prison; a fine of up to $250,000; the

18   supervised release of at least five years, that could be

19   extended to the time of your life; and a special assessment of

20   $100.

21           In Count Two, the maximum penalty that could be

22   imposed is at least ten years in custody, that could be

23   extended to the term of your life; a fine of up to $250,000;

24   supervised release of at least five years and up to the term

25   of your life and a special assessment of $5,100.

1          In Count Three, the maximum penalty that could be

2    imposed is a mandatory minimum of ten years in prison and a

3    maximum of up to life in prison; a fine of up to $250,000;

4    supervised release of at least five years but up to life; a

5    special assessment of $5,100.

6          In Count Four, there is a mandatory minimum of 15

7    years in prison and a maximum term of imprisonment of 30 years

8    in custody; a fine of up to $250,000; supervised release of at

9    least five years but up to the term of your life and a special

10   assessment of $5,100.

11         In Count Five, the maximum penalty is up to 20 years

12   in prison with a mandatory minimum term of five years in

13   prison; a fine of up to $250,000; supervised release of at

14   least five years or up to the term of your life; a special

15   assessment of $5,100.

16         Sir, do you understand the maximum and

17   potential -- the maximum sentence and potential consequences

18   of conviction of any of these?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand that you have the right

21   to be represented by a lawyer?

22         THE DEFENDANT:  Yes.

23         THE COURT:  You also have the right to represent

24   yourself under certain circumstances.  Do you have any legal

25   training or education?

1          THE DEFENDANT:  I've taken business law courses as
2     part of my management degree.
3          THE COURT:  All right.  Do you understand that there
4     are many dangers and disadvantages to representing yourself?
5     For example, you may be too involved to make the right
6     decisions.  You may have little or no legal training or
7     experience.  You would have to follow all of the same rules
8     that lawyers must follow.  And even if you make mistakes, you
9     will not get any privileges or benefits and I will not help
10    you.  You will not receive special treatment from the Court at
11    all.  Do you understand that?
12         THE DEFENDANT:  Yes.
13         THE COURT:  You will be opposed by a trained and
14    skilled prosecutor who's experienced in criminal law and court
15    procedures.  Unlike the prosecutor, you won't know the
16    complexities of jury selection, you won't know what
17    constitutes a permissible opening statement to the jury, you
18    won't know what is admissible evidence, what is appropriate in
19    cross-examination of witnesses, what motions you must make and
20    when to make them during trial to preserve certain issues for
21    post trial motions and for appeal.  You won't know what
22    constitutes appropriate closing argument.  Do you understand
23    that?
24         THE DEFENDANT:  Well, if there's an adequate law
25    library, shouldn't I be able to arm myself with those types of

1    matters?

2          THE COURT:  I'm telling you what the situation is.

3    Obviously, you would need to take steps.  But otherwise if you

4    don't, this is the circumstance.  Do you understand that?

5          THE DEFENDANT:  I hope that the resources will be

6    available.

7          THE COURT:  All right.  If you go to trial and you

8    are convicted, you will be sentenced under the Sentencing

9    Reform Act of 1984.  The United States Sentencing Commission

10   has issued guidelines that judges must consult and take into

11   account, and that requires to follow the guideline sentence in

12   criminal cases.

13          In determining your sentence, the Court is required

14   to calculate the applicable sentencing guideline range and to

15   consider that range, possible departures under the sentencing

16   guidelines and other sentencing factors under 18 USC Section

17   3553(a).  The sentencing guidelines are somewhat complicated.

18   If you continue to represent yourself, you won't have anyone

19   to advise you about the guidelines or to tell you what factors

20   the Court must or should consider in determining the sentence.

21   That means that you may overlook a potential ground for

22   departure or factor that might be important in your

23   presentence -- or in your presentation to the Court concerning

24   an appropriate sentence.  Do you understand that, sir?

25          THE DEFENDANT:  Yes.  But am I to understand that I'm

1  not going to have the assistance of standby counsel?

2           THE COURT:  You have no right to standby counsel,

3  sir.  You have the right only to have counsel or to represent

4  yourself.  And I cannot assure you in any way whether you will

5  have standby counsel.

6           THE DEFENDANT:  What about an investigator?

7           THE COURT:  You do not have the same access to

8  experts or other investigators who are -- or others who could

9  help in connection with this case.  Do you understand that?

10          THE DEFENDANT:  That's the first I've heard of that.

11          THE COURT:  All right.  And as you mentioned, there

12 may be legal research you wish to do that you may have only

13 limited access to books and other resources.  Do you

14 understand that?

15          THE DEFENDANT:  It doesn't seem fair, but you've now

16 given me notice of it.

17          THE COURT:  All right.  Again, as to standby counsel,

18 as I indicated, you don't have the right to standby counsel or

19 advisor or associate or co-counsel.  And whether you have that

20 is a situation that we're in.  Do you appreciate the

21 situation, Mr. Larson?

22          THE DEFENDANT:  I'm sorry.  Can you repeat that?

23          THE COURT:  Yes.  I just want to make sure, we just

24 talked about it a little bit, that you don't have the right to

25 stand by, advisory or co-counsel.  And at this time I can't

1   make you any promises as to whether you will have standby

2   counsel.  Do you understand that, sir?

3          THE DEFENDANT:  Yes.

4          THE COURT:  When you represent yourself, there is an

5   important right that you give up.  And it is if you are

6   convicted on appeal, you are not able to claim an ineffective

7   assistance of counsel.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  The Court cannot advise you any further

10  of the elements of the crime or any defenses.  Do you

11  understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  At some later time, a judge could decide

14  that you could no longer proceed in pro per and that it would

15  be difficult at that time for someone to come in and represent

16  you.  Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.  Given --

19         THE DEFENDANT:  What would happen in that situation?

20         THE COURT:  It may be difficult, as I said, for an

21  attorney to step in at that time and it could prejudice your

22  case.  Given all of these things we've discussed, do you still

23  wish to represent yourself, sir?

24         THE DEFENDANT:  Yes.  Although as a preliminary

25  matter, I had sent in a motion to the Court objecting to the

1   fact that at my competency hearing I was denied my right to

2   testify pursuant to *United States versus Gillenwater*.  And my

3   motion was sent back by the clerk with a notice saying that

4   since I was represented by counsel, my counsel would have to

5   submit any motions.  I'm still maintaining my right to testify

6   because I think that the denial of that could prejudice me in

7   ways that I described in my motion.

8           THE COURT:  All right.  Let me then return to the

9   question at this time.  And that is whether you do still wish

10   to represent yourself, sir.

11          THE DEFENDANT:  Yes.

12          THE COURT:  All right.  Mr. Enos, do you have

13   anything to add?

14          MR. ENOS:  I do, Your Honor.  A few things.  Most of

15   all, the defendant is in custody and we're still working

16   through the additional burden or hurdles that COVID has put in

17   front of us.  There's a protective order in this case with

18   respect to the production of discovery that enable the

19   government at this point to provide without redactions to the

20   defense.  The protective order is largely based on the fact

21   that the discovery in this case includes confidential

22   information about minors and other third parties.  That needs

23   to be adhered to.

24          So we're going to have to figure out some type of way

25   to enable Mr. Larson to review the evidence in this case

1    subject to the protective order which prohibits the defense

2    from disseminating it to others.  So there will need to be

3    steps that take place to ensure that Mr. Larson has access to

4    his discovery, and particularly with the confidential

5    information about third parties, doesn't seem feasible to me.

6           In addition to that, the government has been working

7    hard toward identifying and producing supplemental discovery

8    in this case so far.  Within the last few weeks, we've

9    obtained, I believe, 75 pages of reports from the Denver

10   Police Department and sent that out.  I've also learned that

11   there's some information from the Eastern District of Virginia

12   pursuant to what was analyzed pursuant to the search warrant

13   of Mr. Larson's case.  Produced some of that.  I'm in the

14   midst of trying to determine if there's more or if there's

15   going to be a report summarizing that information.  So on and

16   so forth.

17          You know, on top of that, it's -- we're going to have

18   to figure out a way that I can communicate with the defendant.

19   Not just with respect to discovery, but with respect to timing

20   issues, you know, trying to meet and confer about pretrial

21   hearing dates and trial dates and so on and so forth.  That

22   we're going to be severely limited by if the best I can do is

23   talk to Mr. Larson as he appears in court.  All of these

24   matters need to be addressed so there aren't any appellate

25   issues and we're back here months if not years from now

1   starting all over again.

2           So the government has some concerns.  Certainly has

3   some concerns.  And, you know, Mr. Larson is entitled to

4   represent himself.  I'm not sure the timing of that is perfect

5   to start that now.  But I'll leave that to the Court to

6   decide.  But nevertheless, we're going to have to figure out

7   some way to make sure that there's a line of communication, a

8   way for Mr. Larson to review information.

9           Part of the information that he's entitled to review

10  that we don't provide to the defense are contraband materials

11  that are housed within electronic devices.  There's a

12  provision under the Adam Walsh Act, 18 USC 3509(n).  All the

13  name I work defense attorneys.  They can hire experts.  If

14  they want, they can arrange to have their defendant so appear

15  in a meet-out room where they can review this material.  And

16  that's going to require a lot of thought so we can make sure

17  that all of this takes place if Mr. Larson is going to be

18  representing himself now.

19          You know, I welcome Mr. Larson's thoughts about this

20  too, because the Ninth Circuit is going to see all of these

21  transcripts.  A potential alternative is let's get all the

22  discovery done.  If Mr. Larson wants to have an investigator

23  do stuff, it would be easier if he were represented and then

24  this issue could always be revisited later if he wants to try

25  the case himself or file his own pretrial motions, then we can

1    handle that then.

2           I'm worried about the record demonstrating that Mr.

3    Larson has gotten all the information he needs and all the

4    information reviewed as well without violating the terms of

5    the protective order.  Because they're important in these

6    cases.  There's real sensitive information here about minors.

7    And it's not just the minor victim in this case, there's all

8    sorts of information in there.

9           So those are the government's concerns that I wanted

10   to make sure are on the record that are at least part of the

11   Court's thought process.

12          THE COURT:  All right.  Thank you.  Mr. Jones, do you

13   have comments?

14          MR. JONES:  Well, in terms of his right to represent

15   himself, I think it's up to the Court to decide that.  He

16   certainly has a constitutional right under the Sixth Amendment

17   to do that.  And it is fairly broad, based on case law, that

18   has established that right.  The Court certainly has the

19   discretion to appoint standby counsel.  It's not required.

20   And an investigator, I think, is something he's entitled to if

21   he's representing himself.

22          The issues Mr. Enos raised are, you know -- they

23   complicate that self-representation, but I don't think they

24   impede -- bring the Sixth Amendment right to a halt here.

25   It's something he has to be accommodated with.

1          But as far as the self-representation, I have to

2     submit it to the Court's decision.  He appears competent.  He

3     has a college degree.  His IQ, on the reports that were

4     submitted to the competency experts, is 139.  He's been very

5     proactive writing motions that he submitted to the Court

6     already.  So, you know, he certainly intelligent and has

7     considerable knowledge.  I won't express my -- I mean, I

8     advise clients routinely against this.  But that's his right.

9          THE COURT:  Mr. Larson, did you hear the comments

10    that Mr. Enos made about the difficulty that could be

11    encountered with you during discovery?

12         THE DEFENDANT:  Yes.  I would say that to the extent

13    there's a conflict between my Sixth Amendment right to

14    represent myself and the protective order since Sixth

15    Amendment is the constitutional right that that should tend to

16    supercede that.  That should tend to override it.

17         THE COURT:  I'm sure we can work out the details.

18    Mr. Enos' comment though was also directed toward the issue of

19    whether you have considered whether you would wish to delay

20    representing yourself until after discovery has been

21    completed.  Is that something that you have thought about or

22    wish to think about?

23         THE DEFENDANT:  Well, this is the first that I've

24    heard that -- of not having standby counsel.  I mean, I know

25    it's a possibility that I could have them, but it's been my

1    experience that there usually was in my previous court case.

2    I don't know, which way is the court leaning on that issue?

3            THE COURT:  I couldn't say.  I will tell you that

4    standby counsel, though, is not your representative.  I mean,

5    it wouldn't -- standby counsel cannot take over your defense.

6    You understand that, right?

7            THE DEFENDANT:  Right.

8            THE COURT:  So you would still be representing

9    yourself, even if you had standby counsel.  Standby counsel

10   would not be in the position to do the work that would be

11   needed toward preparing your case for trial.  So it's not like

12   you -- it's not sort of a situation in which you continue as

13   you are now with more control.  It is you take over the

14   defense and standby counsel is in the background.  Do you

15   understand that?

16           THE DEFENDANT:  What do they do while they're in the

17   background?

18           THE COURT:  They're prepared to assist but they do

19   not defend.  And if, in fact, at this point you were to change

20   your mind and decide you didn't want counsel and not represent

21   yourself any further, then that attorney would be prepared to

22   take over your defense.

23           THE DEFENDANT:  So basically it's kind of like the

24   vice-president, they don't fulfill any executive role until

25   the president's gone.

1          THE COURT:  Yeah, pretty -- that's not a bad analogy.

2          THE DEFENDANT:  All right.  Understood.

3          THE COURT:  So I guess -- you know, you haven't had

4   the opportunity to think through maybe.  I mean, this isn't a

5   today or never type situation.  If you wish to defer

6   consideration of a *Faretta* issue, we can do that.  If you want

7   it decided today, I will do that.  But if you would like to

8   consider the issue of continuing with Mr. Jones representing

9   you for now, through discovery or through whatever point, you

10  can do that.  It's up to you, sir.

11          Do you wish to proceed with the *Faretta* motion today

12  or would you like to delay that to allow discovery to proceed?

13  It's up to you.  It doesn't matter to me at all.

14          MR. ENOS:  One comment, Your Honor.

15          THE COURT:  I'm sorry.

16          MR. ENOS:  Can I supplement what the Court just said

17  there?

18          THE COURT:  Yes.

19          MR. ENOS:  Mr. Larson, the government is happy to

20  even provide Mr. Jones, if the Court would like to have

21  periodic status conferences, updates as I'm able.  You know,

22  the issue I'm most concerned about now is communicating with

23  law enforcement in the Eastern District of Virginia to make

24  sure we have everything that they located that's relevant to

25  the case and we can get it to you.  I want to make sure that

1   you have all this information as well.

2          Candidly, I don't care if you represent yourself or

3   not.  But I do care that you -- that we have a way to get you

4   all the information you need.  So that's just something else.

5   We can take this in baby steps.  And I'll just say on the

6   record here, the government wouldn't object to you bringing

7   this very motion at any time.

8          THE DEFENDANT:  Perhaps there could be redacted

9   discovery done.

10         MR. ENOS:  That will take some time to do.  You know,

11  we can work on redacting discovery and that way you can at

12  least -- anything that's redacted we can have for you to look

13  through.  There's still going to be electronic evidence that

14  you're entitled to go to a law enforcement office or a court

15  office, frankly, and have it made reasonably available to you.

16  But you cannot take that back.  Right?  Like I said, just look

17  at 18 USC 3509(a).  You can read all about it.

18         So we could do that.  That will take some time to

19  kind of start over, you know.  If you want to just look at it

20  with your attorney, there's not going to be anything redacted.

21  There won't be one letter of one word that's going to be

22  blacked out.  If we have to go ahead and do that, that's going

23  to take some time for us to do.

24         THE COURT:  All right.  Mr. Larson, I do want to

25  emphasize, there's no pressure on you either way.  Mr. Enos is

1   pointing out issues that can be overcome and we will overcome

2   them.  But it is your decision ultimately whether you wish to

3   proceed with the *Faretta* motion today.

4          THE DEFENDANT:  Yeah, I still want to delay it until

5   after discovery.

6          THE COURT:  All right.  What I will do is I will find

7   that you've withdrawn your motion.  And Mr. Larson, what I

8   want to make clear to you is you can reinitiate that at any

9   time.  If you want to do it before discovery is finished, you

10  can do that.  You're free to make that motion.

11         THE DEFENDANT:  I think --

12         THE COURT:  I'm sorry.  Go ahead, sir.

13         THE DEFENDANT:  I think you misunderstood.  I was

14  saying I don't want to delay it.

15         THE COURT:  Oh, okay.  All right.  Then given the

16  consideration, I do think what Mr. Enos has raised are issues

17  that don't negate the Sixth Amendment right to represent

18  himself.  I do find that Mr. Larson has voluntarily, knowingly

19  and intelligently waived the right to be represented by an

20  attorney with the full understanding of that right.  And I do

21  grant Mr. Larson his pro per status.

22         As to the question of standby counsel, Mr. Larson, am

23  I understanding that you are requesting that?

24         THE DEFENDANT:  Yes.  And an investigator.

25         THE COURT:  All right.  I will then continue Mr.

1  Jones as standby counsel capacity.  Mr. Jones, do you accept

2  that?

3          MR. JONES:  Yes.  I will accept that.

4          THE COURT:  All right.  We do need to talk about the

5  status of the matter.  Mr. Enos, it sounds like you're going

6  to need to start working on getting redacted discovery to Mr.

7  Larson unless you have a different solution to the situation.

8          MR. ENOS:  Well, the options are to get -- at least

9  with respect to the printed discovery thus far, we can go

10 ahead and redact it and get it to Mr. Jones so he can get it

11 to Mr. Larson.  With respect to the non -- if Mr. Larson wants

12 to look at non-redacted versions of the printed discovery,

13 that's still subject to the protective order so we can work

14 with Mr. Jones to make sure that he can review those as well.

15 And, you know, we'll certainly make sure that he's -- he knows

16 what the terms of the protective order are.

17          With respect to electronic discovery, that's the

18 whole separate deal.  We have to make it reasonably available.

19 But we don't just give it to even defense counsel because it

20 includes illegal matter, you know, child pornography in there.

21 So but we can -- you know, I'm happy to work with Mr. Jones in

22 that regard as well.  And often times an investigator or an

23 expert wants to review that as well.  So I can get started

24 with all of that.

25          I'm just wondering if the Court thinks it best, it

1    sounds like -- I don't want to put any more work on the

2    Court's plate, but this seems like a case where we should have

3    somewhat frequent status conferences just to make sure the

4    case is moving forward, Mr. Larson, if he has anything he'd

5    like to say on the record, he can.  You know, I would suggest

6    perhaps every four weeks just so we know that we're marching

7    forward.

8          Even if it's a -- you know, what we normally do in

9    magistrate court, continue the status conference.  At least

10   Your Honor knows what we're doing, Mr. Jones and I knows and

11   Mr. Larson is what's expected of all of us moving forward and

12   the record is very clear that we've competently addressed

13   every step in the case.

14         THE COURT:  All right.  Mr. Larson, do you have --

15         THE DEFENDANT:  I -- I've been told we just got off

16   quarantine.  What's the question?

17         THE COURT:  Did you have comments, Mr. Larson, about

18   status of the matter?

19         THE DEFENDANT:  No, that's about it.  One other

20   question I had, though.  So if I'm going into public trial

21   rights, the *United States versus Rivera* addressed the

22   importance of the participants in the hearing being able to

23   see who's in the gallery.  Is that possible?  Like can anyone

24   join this Zoom call and be seen like by the participants and

25   the judge and the prosecutor and so on?

1           THE COURT:  The public is entitled to have access.

2      But the public is not entitled to be seen in this proceeding.

3      The public does have access today as I mentioned earlier.

4           THE DEFENDANT:  Okay.  Okay.  So are you saying that

5      you can't tell who's in this hearing?  Who the spectators are?

6           THE COURT:  I cannot tell who's on the public line.

7           THE DEFENDANT:  In a teleconference line?  Or the

8      Zoom?

9           THE COURT:  I can't tell who's on the public line,

10     Mr. Larson.

11          THE DEFENDANT:  Okay.  I don't know what that is.  I

12     mean, what about the Zoom call?  Can anyone join in the Zoom

13     call?  Is that what you mean by "public line"?  Or are you

14     talking about the phone line?

15          THE COURT:  I'm talking about -- there are other

16     people on the Zoom call for other cases.  They are

17     specifically given confidential information that allows them

18     to call in to prepare for their cases.  The public line,

19     anyone can call in at any time and they don't have the

20     opportunity to speak through that line but can hear all the

21     proceedings.

22          THE DEFENDANT:  Okay.  So I'm just going to put on

23     the record my objection based on public trial grounds to that

24     state of affairs based on *US versus Rivera*.

25          THE COURT:  All right.  That's overruled.  Anything

1   further, Mr. Larson, related to the status of the matter?

2          THE DEFENDANT:  Not that I can think of right

3   offhand.

4          THE COURT:  All right.  The matter has not been set

5   for trial.  Are you asking for us to set that for trial, Mr.

6   Larson, at this time?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you wish to waive your rights under

9   the speedy trial act to have that tried within 70 days or are

10  you asking for a trial within 70 days?

11         THE DEFENDANT:  Within 70 days.

12         THE COURT:  All right.

13         MR. ENOS:  Your Honor.

14         THE COURT:  Yes.

15         MR. ENOS:  I don't know how the government is

16  supposed to get all this -- you know, this discovery out in

17  time for defendant to review it all as well as write any

18  pretrial motions.  But the government has pretrial motions

19  that it plans on filing.  And that is under (h)(1)(D) of the

20  Speedy Trial Act.  That time would be excluded from filing

21  through the disposition of the motion.  And so the government

22  would ask that pretrial motions be set.  It seems to me it

23  would make sense for both parties if we could finish discovery

24  first, you know.  And so in that end, I think the ends of

25  justice under (h)(7)(A) would apply to let us reach that

1   first.

2          I'm happy to set a trial date, but I think we need to

3   accommodate what's going to be necessary to make sure we can

4   have the trial that's cognizant of whatever appellate issues

5   Mr. Larson is going to be considering between now and then.

6   So with that said, I think we need to accommodate all of this.

7          You know, what I can do is within the next four weeks

8   at least identify any additional discovery that may be out

9   there in Virginia.  I have got a name and a number of someone

10  at his that should be able to help me in this regard.  That

11  way I can get all that information to Mr. Jones, who can in

12  turn get it to Mr. Larson.  I've already made it clear on the

13  record I'm happy to accommodate if there's going to be any

14  Adam Walsh review, that will up to defendant to decide if he

15  wants to take advantage of that or not.

16         And so what I would like -- what I would at least ask

17  for.  I'm happy to set a trial date, but I would also ask for

18  an ends of justice time to be ordered to enable discovery to

19  finish.  And whatever investigator Mr. Larson wants, we can

20  accommodate that in that ends of justice time as well.  As

21  well as under (h)(1)(D) for the accommodation of -- or the

22  time required between the filing and the disposition of

23  pretrial motions, that needs to be calculated as well.

24         So I'm happy to make recommendations in this regard

25  and also come up with dates, but, you know, I don't know what

1    defense counsel -- well, I guess that doesn't matter for the

2    trial date.  So I do -- I did, at least with my -- three of my

3    primary agents, I do have their schedules so I can make sure I

4    include that.  But the government would ask that we come back

5    in four weeks with an ends of justice finding and have a

6    status conference on April 1, or whatever date works for the

7    Court and the defense in April.  All of the Fridays work for

8    me.  And I could report to the Court what I've done and, you

9    know, the extent discovery is complete.  It's going to take

10   time to loop in a paralegal and work with her to redact every

11   page.  And you know, thereafter I'd like some time to draft

12   pretrial motions -- I do have a trial in April with Judge

13   Drozd.  To draft pretrial motions and then defendant is going

14   to need time to draft whatever motions he wants as well as

15   oppose mine or the government's and I could oppose his.  And

16   then we can set a trial date.

17        So I've got two recommendations alternative.  One, we

18   can set a trial date and try to work sensibly backwards or,

19   two, the Court can endorse what will be the government's

20   request for an ends of justice finding now, at least through

21   four weeks from now, where we have a clearer sense of

22   what -- you know, when we can actually finish with the

23   discovery.  How we've worked out a game plan with respect to

24   how to ensure that defendant can see whatever he wants and

25   whatever defendant wants to do with getting an investigator,

1    whatever work he wants done.  That could be accommodated as

2    well.  And then we could -- I think the mist will largely have

3    cleared with respect to what the parties can best agree with

4    the Court about filing date, you know, for pretrial motions

5    through responses and hearing.  And then ultimately a trial

6    confirmation hearing and a trial.

7            That's what the government moves for based on

8    everything we've talked about and today will prove to be a

9    voluminous transcript.  I think we've got good cause for that

10   motion.  And we could come back in four weeks and have a much

11   clearer sense of what still needs to be done and what can be

12   done within the Speedy Trial Act of 18 USC 3161.

13           THE COURT:  Mr. Enos, can you give me a sense of how

14   much discovery we're talking about so far?

15           MR. ENOS:  Well, sure, there's two types.  There's

16   written and electronic.  And in electronic right now, what we

17   have locally are a laptop and a cell phone and I believe

18   another cell phone.  There might be one or more device there

19   that I haven't thought of off the top of my head.  So that's

20   the electronic right.

21           And, you know, Mr. Larson will know what the volume

22   of the data is in those devices better than me because the

23   majority of them, once -- or still do belong to him.  With

24   respect to what's being analyzed pursuant to a search of his

25   residence in the Eastern District of Virginia, I don't know

1    precisely what the volume of that is.  You know.  Or what

2    we'll even need.

3         What I understand we've produced so far are some raw

4    data reports that are hard to read in the Kings English about

5    parts of those -- or hard drives that may have related to this

6    case.  Right?  But I still need to talk to the agent out there

7    to see, hey, can I get a summary of what this is?  And what it

8    depicts so I can understand it and produce it to the defense?

9         As far as other paper documents, there may be limited

10   things out there.  I think we've largely produced all the

11   paper stuff with the exception of minor -- with the exception

12   of what I may learn from Virginia or other limited things

13   that -- I'm going to talk to Fresno PD.  I'm going to talk to

14   his Fresno and just say, "Is there anything else?  Give it to

15   me so we can get it out."

16        That's the best I can give you as far as what's still

17   necessary to make sure that we've given out everything.  You

18   know.  The year and change ago we gave our original discovery.

19   I believe we supplemented at least twice.  One with Denver

20   information, one with initial information from Virginia.  So

21   that's why I think, you know, at least -- I'll meet every week

22   if the Court wants to.  I'm not sure that would be productive.

23        But we're asking for an ends of justice speedy trial

24   waiver at least to the point where we can give the Court a

25   better sense of, hey, you know, this is what's still out

1    there.  This is what we've done since we last met in court to
2    get it to the defense.

3           And again, defendant is talking about getting an
4    investigator.  You know, I don't know if he's aware of how
5    long it takes to get investigations completed.  But that's up
6    to him.  He's representing himself now.  So I'll let him
7    figure that out.  But you know where we are basically with
8    respect to discovery.  And I think we're near the end of it.
9    But this case is -- shoot, there's information out in Europe
10   that I don't anticipate we'll be able to get.  That doesn't
11   mean we're not trying.  So I won't even bring that up as an
12   extra hurdle.  This case has enough of them.

13          THE COURT:  All right.  Mr. Larson, your comments.

14          THE DEFENDANT:  I'm wondering why it's taking so long
15   to get discovery ready when this case has been going on for
16   more than a year now.  I mean --

17          THE COURT:  You heard Mr. Enos' comments.  I
18   appreciate what you're saying.  Are you prepared to have -- I
19   mean, I assume since today was only just granted your *Faretta*
20   motion, that you're not prepared with an investigator to
21   proceed.  Are you?  Or maybe I'm wrong.  Maybe you don't want
22   an investigator.

23          THE DEFENDANT:  Well, we had --

24          THE COURT:  Just trying to ask you.  What's the
25   status of your discovery?  Do you have investigation you want

1   to conduct?  How quickly can you do that?  How much time do

2   you need?  Or are you not looking for any?  I don't want to

3   put words in your mouth.  But I do want to have a sense of

4   your ability to be prepared.

5          THE DEFENDANT:  Right.  I haven't figured out the

6   exact role of the investigator in terms of what kind of

7   investigation that might be.  I thought it might be a thing of

8   finding witnesses and that sort of thing.  You know.  Doing a

9   lot of work that the attorney isn't -- doesn't have the

10  resources or experience, training, that sort of thing,

11  delegates that to an investigator --

12         THE COURT:  Okay.

13         THE DEFENDANT:  That type of things.  But, yeah,

14  I -- I don't really have like a timeline at the moment.

15  Certain number of weeks or whatever for an investigator.

16         THE COURT:  Let me just stop you.  I think I lost

17  you.  You said at this point you don't have a time frame for

18  the investigation that you may want and you're not quite sure

19  the nature of that.  Is that true?

20         THE DEFENDANT:  Yeah.  I mean, it would depend on the

21  discovery that I see.  I might see that and say, oh, well, in

22  order to respond to that, let's look into this.

23         THE COURT:  Okay.  All right.  Mr. Larson, I am

24  inclined to exclude time because, quite frankly, as Mr. Enos

25  has said, discovery has been produced for some time.  He does

1   indicate that there's more to do, but that most of it has

2   occurred and it doesn't sound to me as if you've had much of

3   an opportunity to review that.  So I am intending to exclude

4   time at least for a month to allow us to come back and talk

5   about what the plan is.  Is discovery -- and I'm expecting at

6   that time discovery is going to be, if not complete, very

7   close to it and to allow you to consider whether you have

8   motions you want to file.  Sounds like Mr. Enos does.

9          So that's my intention.  If you have any further

10  comments I would hear them now.

11         THE DEFENDANT:  Hmm.  I guess I would just assert my

12  speedy trial right.  That's all I have to say about it.

13         THE COURT:  All right.  Based upon the need to allow

14  the discovery to be completed to allow counsel, Mr. Enos, to

15  do what is necessary to accommodate Mr. Larson's pro per

16  status, to allow him to have sufficient time to review both

17  the electronic and written discovery.  To allow Mr. Larson

18  time to consider whether he needs an investigator and the

19  extent to which that investigation is necessary, either to

20  identify additional discovery or to locate witnesses and to

21  conduct investigation in that time, and to prepare for filing

22  of pretrial motions, I will find that good cause exists and

23  the interest of justice outweigh the interest of the defendant

24  and the public in a speedy trial.  I am relying specifically

25  on 18 USC Section 3161(h)(7)(B), specifically (4).  I do find

1  that failing to allow this exclusion of time would prevent

2  both Mr. Larson and the government the reasonable time

3  necessary for effective preparation, taking into account the

4  exercise of due diligence.  So I will exclude time pending the

5  next hearing.

6          It's been proposed that we meet again on April 1st.

7  Mr. Larson, do you have comments about when that next hearing

8  would be?

9          THE DEFENDANT:  No.

10          THE COURT:  All right.  Mr. Enos, is April 1st then

11  the date you're proposing?

12          MR. ENOS:  It is, Your Honor.  And as an additional

13  basis for the Court's time exclusion, is it also to allow the

14  government time to take the discovery that's already been

15  provided and have it redacted so Mr. Larson has paper copies

16  that are not subject to the protective order?

17          THE COURT:  Yes.  That is a good point.  I'm also

18  going to exclude time for that reason because clearly, Mr.

19  Larson, you need that to prepare.  Is that true?  Or are you

20  not wanting that information?

21          THE DEFENDANT:  You're talking about redacted

22  discovery?

23          THE COURT:  Correct.

24          THE DEFENDANT:  I do want the discovery, yes.

25          THE COURT:  All right.  That's 18 USC Section

1  3161 -- let's see, Mr. Enos, the subdivision?

2          MR. ENOS:  It's the same basis, Your Honor, just an

3  additional basis for what the Court has already identified,

4  that being 18 USC 3161(h)(7).

5          THE COURT:  All right.  So I will set that on April

6  1st.  I will intend to conduct that hearing in person assuming

7  COVID allows it.

8          Mr. Larson, I am advising you, though, there is a

9  mask mandate in the courthouse.  I appreciate that that goes

10 against your views of the disease, but that is the requirement

11 for the courthouse.  Do you still wish to have that appearance

12 in person in the courthouse understanding that you would be

13 required to wear a mask to appear in the courtroom?

14         THE DEFENDANT:  I want to have the hearing in person.

15 I still object to the mask mandate.

16         THE COURT:  All right.  I understand that.  Mr.

17 Larson, though, are you going to comply with that mandate?

18         THE DEFENDANT:  Probably not.

19         THE COURT:  You understand that if you come to the

20 courthouse and will not wear a mask, you will not be permitted

21 in the courtroom.  Do you understand that, sir?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  April 1st.  I'm excluding

24 time pending a hearing on April 1st.  Anything further from

25 either side?

39

1        MR. ENOS:  No, Your Honor.  Thank you.

2        MR. JONES:  I would just like to make a comment here.

3   And that is there has been an investigator and he is in the

4   CJA system in this case and he could be made available to Mr.

5   Larson if that is his choice.  His name is Bryan Pinto.

6   B-R-Y-A-N.

7        THE COURT:  All right.  Thank you, Mr. Jones.

8   Anything further then from either side?

9        THE DEFENDANT:  No.

10        MR. ENOS:  No, Your Honor.

11        THE COURT:  All right.  Thank you.

12     (The proceedings were concluded at 10:55 a.m.)

13

14        I, KAREN HOOVEN, Official Reporter, do hereby certify

15   that the foregoing transcript as true and correct.

16

17   DATED:  25th of April, 2022        /s/  Karen Hooven
                                        KAREN HOOVEN, RMR-CRR
18

19

20

21

22

23

24

25